# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLARENCE R. COLLINS, JR., et al.,　　　　　:
　　　Plaintiffs,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　: Civil Action No. 3:03-cv-945 (CFD)
　　　　　　　　　　　　　　　　　　　　　　:
OLIN CORPORATION, et al.　　　　　　　　:
　　　Defendants.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:

## RULING ON MOTION FOR PROPOSED SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

This case arises out of a class action suit brought by the plaintiffs, homeowners in the

Newhall section of Hamden, Connecticut, against several defendants, including Olin Corporation

("Olin"). The plaintiffs alleged that the soil and groundwater on their properties was

contaminated as a result of the defendant's conduct. For the following reasons, this Court finds

that the proposed settlement is procedurally and substantively fair, the distribution of settlement

proceeds is reasonable and adequate, and grants the motion for settlement. The motion for

attorneys' fees and expenses is also granted.

## I.　　　Factual Background and Procedural History

In May of 2003, the plaintiffs brought this action against Olin and the Town of Hamden.

They alleged that industrial wastes produced by the Winchester plant in New Haven were

deposited in their neighborhood in Hamden (the Newhall neighborhood) and have contaminated

their properties. The plaintiffs sought relief for negligence; recklessness; violation of the

-1-

Connecticut Environmental Protection Act of 1971, Conn. Gen. Stat. § 22a-15 *et seq.*; engaging

in abnormally dangerous activity; intentional infliction of emotional distress; and recovery of

response costs under the Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA"), 42 U.S.C. § 9607. The Court has certified a class comprised of all persons

who owned property on May 2, 2003 in the Newhall neighborhood, and three subclasses: (1) the

Contaminated Properties Subclass, (2) the Stigma Subclass, and (3) the Response Costs Subclass.

Counsel for the parties eventually agreed on a proposed settlement agreement. The terms

of this proposal include a settlement fund in the amount of $1,391,500 to be distributed among

the plaintiffs. A Remedial Action Plan approved by the Connecticut Department of

Environmental Protection, although not part of this proposed settlement, has been initiated, and

is separately funded in the amount of $40,000,000.


## II.    Legal Standards and Discussion

Under the Federal Rules of Civil Procedure, a proposed settlement which binds class

members may be approved only "after a hearing and on finding that it is fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2). In addition, a fair settlement may not have been the product

of collusion. See Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).

To determine the fairness of a proposed settlement, a Court must examine both its

procedural and substantive fairness. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir.

2001) (noting that "[t]he District Court determines a settlement's fairness by examining the

negotiating process leading up to the settlement as well as the settlement's substantive terms").

Procedural fairness looks to "the negotiating process by which the settlement was reached."

-2-

Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982). A procedurally fair settlement must be "the result of arm's-length negotiations" wherein plaintiffs' counsel "possessed the experience and ability, and . . . engaged in the discovery, necessary to effective representation of the class's interests." Id., citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 463-66 (2d Cir. 1974). To decide if the substantive terms of the proposed settlement are fair, the Court must consider the nine Grinnell factors:

> "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

Grinnell, 495 F.2d at 463 (internal quotations omitted).

Moreover, a presumption of fairness, adequacy, and reasonableness may attach if the Court finds that arm's length negotiations took place between experienced counsel after a period of meaningful discovery. See Wal-MartStores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing Manual for Complex Litigation, Third, § 30.42 (1995). Federal courts have adopted a "strong judicial policy in favor of settlements, particularly in the class action context." In re Painewebber Limited Partnerships Litigation, 147 F.3d 132, 138 (2d Cir. 1998), citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) and In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

### A.    Procedural Fairness

Since the plaintiffs in this case were adequately represented and, as a result, the proposed

settlement was the product of "arm's length negotiations," see Weinberger, 698 F.2d at 74, the

proposed settlement is procedurally fair. This case was originally filed in May 2003. See, e.g.

Notice of Removal, Civil Action No. 03-cv-945 (CFD), Dkt. # 1. Since that time, counsel for the

plaintiffs consulted experts, conducted many depositions, interviewed fact witnesses, and

requested production of numerous documents. See Plaintiffs' Proposed Ruling, Civil Action No.

03-cv-945 (CFD), Dkt. # 317, p. 10. As a result, counsel developed a sufficient level of

familiarity with the case so as to seek and obtain certification of the class, brief and argue

dispositive motions, and engage Olin's counsel in settlement negotiations. See id.

During those negotiations, counsel for the parties functioned as adversaries. Magistrate

Judge Thomas P. Smith held a settlement conference involving counsel for both sides on June

18, 2009 in Hartford. See Notice of Settlement Conference, Civil Action No. 03-cv-945 (CFD),

Dkt. # 287. When these negotiations did not lead to a resolution, counsel for both parties again

convened in Boston for a full-day mediation before retired Judge William Cahill of the San

Francisco County Superior Court. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945

(CFD), Dkt. # 317, p. 11. The compensation structure set forth in the proposed settlement

agreement comports with Judge Cahill's recommendation. See id. This proposal would create a

settlement fund that is three times as large as Olin's final offer during the settlement conference

before Judge Smith. See id.

After more than six years of litigation and several formal mediation sessions, counsel for

both sides agreed to a proposed settlement funded by Olin to an extent that far exceeds its initial

offers. This record suggests that the plaintiffs received adequate legal representation and that the

settlement agreement is the product of "arm's length negotiations." See Weinberger, 698 F.2d at

-4-

74. Without any evidence of collusion, the procedural element of this proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Adequate notice was also provided to all class members.

### B.    Substantive Fairness

#### 1.    *Complexity, Expense, and Likely Duration of Litigation*

Under Grinnell, the Court must examine a variety of factors in determining the substantive fairness of a proposed settlement. See 495 F.2d at 463. In this case, the "complexity, expense and likely duration of the litigation," see id., counsels in favor of finding this proposed settlement to be fair. Should this case continue, counsel for the plaintiffs face complex issues of environmental law. In order to try to prove their case, the plaintiffs would have to identify and retain a variety of expert witnesses. Counsel for the plaintiffs set forth seven specific categories which would require expert testimony at trial, including toxicology, waste disposal practices, environmental contamination, ammunition, diminution of property values, and emotional distress. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 13. In addition to the complex issues of proof, securing expert testimony in these areas would be expensive for the plaintiffs. Furthermore, rejecting this proposed settlement would force this case to continue into its seventh year of litigation, with much time still ahead. As a result, this factor counsels in favor of approving the proposed settlement.

#### 2.    *Reaction of Class Members*

Another important aspect of evaluating the fairness of the proposed settlement is the

reaction of the class members. See Grinnell, 495 F.2d at 463. During the notice period, none of

the Contaminated Properties Subclass decided to opt out of the proposed settlement and just six

of the 452 members of the Stigma Subclass elected to do so. See Plaintiffs' Proposed Ruling,

Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 14-15. Afterwards, Elizabeth Hayes,

President of the Newhall Coalition, submitted a letter protesting the settlement which was signed

by other class members.[1] See Letter from Elizabeth Hayes, Civil Action No. 03-cv-945 (CFD),

Dkt. # 315 (hereinafter "Hayes Letter"). This letter articulated several objections to the proposed

settlement, primarily that they preferred full remediation (instead of a clean-up that extended four

feet below the surface) and that their claims justify more favorable compensation. See id., pp. 3-

4. At the fairness hearing, Ms. Hayes and other class members spoke to the Court and voiced the

reasons behind their opposition to the proposed settlement.

The Court understands that the class members who spoke at the settlement hearing, like

all the other plaintiffs, have suffered a terrible ordeal. Although not part of this settlement, under

the current plan, Olin and the State of Connecticut will each contribute half of the $40 million

required to fund the proposed remediation process. See Plaintiffs' Proposed Ruling, Civil Action

No. 03-cv-945 (CFD), Dkt. # 317, p. 7. As to this settlement, homes in the Contaminated

Properties Subclass will be remediated up to four feet below the surface. The class members

whose homes are not fully remediated by this clean-up will receive $23,000, while class

---

[1]Plaintiffs' counsel contends that the letter contains signatures from individuals who are
not members of the class. Of the eighty-five signatures, twenty-seven were not members of the
class. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7.
Of the fifty-eight signatures, seven were members of the Contaminated Properties Subclass and
fifty-one were members of the Stigma Subclass. See Plaintiffs' Proposed Ruling, Civil Action
No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7.

members whose homes are fully remediated will receive $7,600. See id. at pp. 22-23. Members of the Stigma Subclass will receive $750 per property and all members will retain several claims, including the ability to seek damages for manifest physical injuries. See id. at pp. 4, 23.[2] Going forward, the class members have no assurances that their claims would survive further dispositive motions or that they would ultimately prevail at trial. Furthermore, the Court recognizes the substantial sums allocated by both Olin and the State of Connecticut toward the current remediation plan set forth in the proposed settlement. Continued litigation would risk that fewer financial resources would be available to fund remediation at a later date.

The Court may approve a proposed settlement even where substantial portions of the class have objected. See, e.g. TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1987) (affirming approval of settlement where between fifty-four and fifty-eight percent of classmembers objected); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1325 (2d Cir. 1990) (affirming approval of settlement where "a majority" of classmembers objected); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2d Cir. 1987) (affirming approval of settlement where as many as forty-eight percent of class may have objected). Even if the Court accepts each of the signatories to the Hayes Letter as objectors, less than twelve percent of the classmembers will have objected to the proposed settlement. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 16. On the other hand, nearly thirty percent of the Stigma Subclass has submitted Settlement Forms, along with a majority of the Contaminated Properties Subclass members. See id. Accordingly, this Court may approve the proposed settlement, so long as it is procedurally and substantively fair, despite the objections set forth by the signatories

---

[2]These amounts are before court-approved deduction of attorneys' fees and expenses.

to the Hayes Letter.

>       3.       *Stage of Proceedings and Amount of Discovery Completed*

Several dispositive motions and settlement conferences have taken place throughout the

pendency of this case. As previously discussed, counsel for both parties attended full-day

mediation sessions before Magistrate Judge Smith of this Court and retired Judge Cahill of the

San Francisco County Superior Court. In addition, a variety of dispositive motions have been

briefed, argued, and decided. Most recently, Olin moved for summary judgment on statute-of-

limitations grounds, see Defendant's Motion for Summary Judgment, Civil Action No. 03-cv-

945 (CFD), Dkt. # 208, which was denied. See Ruling on Defendant's Partial Motion for

Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 281. Previously, Olin

successfully moved for partial summary judgment, which lead to the dismissal of those claims

which were based on actions taken prior to 1932 by Olin's predecessor company. See Olin

Corporation's Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 111;

Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945

(CFD), Dkt. # 178. In addition, counsel for the plaintiffs sought and obtained class certification.

See Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-

945 (CFD), Dkt. # 232. To file and argue these various motions, counsel for the plaintiffs would

have reviewed documents, interviewed witnesses, taken depositions, and otherwise fully

investigated the plaintiffs' claims. Based on the number of dispositive motions filed and argued

in this case, as well as the substantial efforts undertaken during settlement conferences, this

Court finds that the maturity of the litigation counsels in favor of approving the proposed

-8-

settlement.

### 4.      *Risk of Establishing Liability and Damages*

This factor requires the Court to balance the benefits of immediate recovery promised by

the the proposed settlement agreement against the risks attendant to further litigation. See

Grinnell, 495 F.2d at 463. As discussed above, the proposed settlement guarantees the plaintiffs

financial compensation and remediation of their properties up to four feet below the surface.

Meanwhile, if litigation were to continue, the plaintiffs would face serious challenges in

establishing their claims against Olin. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-

945 (CFD), Dkt. # 317, p. 18. As discussed in this Court's prior ruling on the issue of successor

liability, see Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-

cv-945 (CFD), Dkt. # 178, the plaintiffs would not be able to recover for any of the damages they

sustained as a result of actions taken prior to 1931. Should litigation continue, Olin stated an

intent to move for summary judgment in an effort to preclude any recovery by the Stigma

Subclass. See Dkt. # 314. In all, several significant issues complicate the plaintiffs' ability to

prove Olin liable during further litigation.

Many of the same factors which complicate the ability of the plaintiffs to prove that Olin

is liable would also hinder their attempts to prove damages. Counsel for the plaintiffs

acknowledged that the process of establishing damages would have rested on an unpredictable

"battle of the experts." Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. #

317, p. 19. Since the proposed settlement promises plaintiffs more than $1 million in recovery

and also funds a significant remediation process, the plaintiffs would face a serious risk of a

lower recovery if the litigation continued.

      5.    *Risk of Maintaining the Class Action and Olin's Ability to Withstand Greater Judgment*

The risks associated with maintaining class certification and the defendant's ability to pay a larger sum in settlement are neutral factors which "weigh neither for nor against approval" of a proposed settlement. In re Luxottica Group S.p.A. Securities Litigation, 233 F.R.D. 306, 314 (E.D.N.Y. 2006). While this Court has certified the class of plaintiffs in this case, see Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-945 (CFD), Dkt. # 232, Olin could still seek decertification of the class before trial, after a verdict, or on appeal. Though Olin has not stated an intent to do so, the ever-present risk of class decertification counsels in favor of approving the proposed settlement. See generally McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008) (decertifying class on appeal).

Even if Olin could withstand a larger judgment, "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement." McBean v. City of New York, 233 F.R.D. 377, 388 (S.D.N.Y. 2006). In addition to payments in excess of $1 million that will be made to the individual plaintiffs, Olin is also contributing $20 million to help fund the remediation efforts. Therefore, the defendant will pay a significant amount to the plaintiffs, both directly and indirectly, under the proposed settlement. As a result, if this Court determines that the proposed settlement is substantively fair, based on the other Grinnell factors, Olin's ability to withstand a higher judgment would not preclude approval of the proposed

-10-

settlement. See D'Amato, 236 F.3d at 85 (noting that "this factor, standing alone, does not suggest that the settlement is unfair"). See also In re Paine Webber Ltd. Partnership Lit., 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (same); In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000) (same).

### 6.   Reasonableness in Light of Plaintiffs' Strengths and Weaknesses

The Court's inquiry into whether the proposed settlement falls within the range of reasonableness "is not susceptible of a mathematical equation yielding a particularized sum," In re Michael Milken and Associates Sec. Lit., 150 F.R.D. 57, 66 (S.D.N.Y. 1993), but rather "must be judged in light of the strengths and weaknesses of the plaintiff[s'] case." In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 178 (internal quotation marks omitted). As discussed above, the plaintiffs face several significant obstacles in proving Olin's liability, the necessary damages, and surviving any further dispositive motions. Given these difficulties as well as the other factors discussed above, the proposed settlement is within a range that is reasonable in the view of this Court.

### C.   Attorneys' Fees and Expenses

In this case, counsel for the plaintiffs seeks $463,833.33 in attorneys' fees, which accounts for one third (33.33%) of the total fund. The Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach "aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396

F.3d 96, 121 (2d Cir. 2005), quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at
*25 (S.D.N.Y. 2002) (internal quotations omitted).  To determine whether that percentage is
reasonable, the Court must analyze several factors: "(1) the time and labor expended by counsel;
(2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the
quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy
considerations." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000),
quoting In re Union Carbide Corp. Consumer Products Business Securities Litig., 724 F.Supp.
160, 163 (S.D.N.Y. 1989).

In this case, the Goldberger factors support an award of fees sought by plaintiffs' counsel.
Since the beginning of this case more than six years ago, counsel has worked a combined 8,468.6
hours.  See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 25.  At
a normal billing rate, they submit that nearly $2,000,000 in fees would have been reasonably
charged.  See id.  As discussed throughout this ruling, this case was extremely complex.  Counsel
faced a challenging environmental tort case, which required expert consultation and numerous
evidentiary challenges.  Several dispositive motions were filed and argued.  Furthermore,
plaintiffs' counsel is experienced in the field of environmental law and, in this case, litigated
against similarly competent and qualified counsel for the defense.  A compensation of one third
of the total fund is in line with the percentage fees awarded in similar class action suits.  See, e.g.
Silverberg v. People's Bank, 23 Fed.Appx. 46, 48 (2d Cir. 2001) (affirming award to plaintiffs'
counsel of "nearly" one third of the settlement fund in attorneys' fees); Dullard v. Berkeley
Associates Co., 606 F.2d 890, 895, fn. 5 (2d Cir. 1979) (observing that awarding one third of
recovery, after costs, is "presumptively permissible" in personal injury cases).  Finally, public

policy considerations justify this award of attorneys' fees. In environmental tort cases, issues of proof and causation are often difficult. Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case.

Plaintiffs' counsel also requests $183,294.84 in expenses which were incurred during this suit. Generally, courts may award reimbursement to counsel for "expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987), quoting Northcross v. Board of Education, 611 F.2d 624, 639 (6th Cir.1979). These costs were originally generated in connection with consulting and securing experts and consultants, deposing witnesses, traveling, and other incidental expenses. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 29. Generally, "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which the paying, arms' length market reimburses attorneys." In re Global Crossing Securities and ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (internal quotation marks omitted). As discussed above, expert input is especially important in the prosecution of an environmental tort case. Therefore, consulting with experts and consultants in the field was "incidental and necessary" to representing the interests of the plaintiff class. See Reichman, 818 F.2d at 283. Likewise, deposing witnesses and the related travel and incidental expenses are also necessary to representing the class. See In re Global Crossing, 225 F.R.D. at 468. Since the amount of costs requested is also reasonable, plaintiffs' counsel is entitled to the requested fees.

## III.    Conclusion

For the foregoing reasons, the Motion for Settlement [Dkt. # 308] and the Motion for

Attorneys' Fees and Expenses [Dkt. # 310] are GRANTED.

So ordered this 21st day of April, 2010 at Hartford, Connecticut.


/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

**Citation #1**
**2012 U.S. Dist. LEXIS 54695**

LEXSEE



Analysis
As of: Jan 15, 2014

**BEBI ALLI, ERIK KEHOU, PATRICIA FERNANDEZ, individually and on behalf
of all others similarly situated, Plaintiffs, -v.- BOSTON MARKET CORP., Defend-
ant.**

**Civil Action No. 3:10-cv-00004-JCH**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**2012 U.S. Dist. LEXIS 54695**

**April 17, 2012, Decided
April 17, 2012, Filed**

**PRIOR HISTORY:** Alli v. Boston Mkt. Corp., 2011
U.S. Dist. LEXIS 143303 (D. Conn., Dec. 8, 2011)

**CORE TERMS:** settlement, STATE LAW, final ap-
proval, certification, attorneys fees, confirms, collective
action, opted, oral arguments, reimbursement, declara-
tions, applicable law, notice, opt, Law Firm, ultimate
recovery, appointment, rationally, expended

**COUNSEL:** [*1] Bebi Alli, Ind & o/b/o all those simi-
larly situated, Plaintiff, Pro se, Bronx, NY.

For Bebi Alli, Ind & o/b/o all those similarly situated,
Plaintiff: Fran L. Rudich, LEAD ATTORNEY, Klafter
Olsen & Lesser LLP, White Plains, NY; Gary Edward
Phelan, Cohen & Wolf-Wspt, LEAD ATTORNEY,
Westport, CT; Jennifer L. Liu, Justin M. Swartz, LEAD
ATTORNEYS, PRO HAC VICE, Outten & Golden-NY,
New York, NY; Margaret B. Ferron, Richard Eugene
Hayber, LEAD ATTORNEYS, Hayber Law Firm LLC,
Hartford, CT; Michael Palitz, LEAD ATTORNEY, PRO
HAC VICE, Klafter Olsen & Lesser LLP, Rye Brook,
NY; Molly A Brooks, LEAD ATTORNEY, Outten &
Golden-NY, New York, NY; Seth R. Lesser, LEAD
ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook,
NY.

For Erik Hehou, Ind & o/b/o all those similarly situated,
Plaintiff: Fran L. Rudich, LEAD ATTORNEY, Klafter
Olsen & Lesser LLP, White Plains, NY; Jennifer L. Liu,
LEAD ATTORNEY, PRO HAC VICE, Outten & Gold-
en-NY, New York, NY; Margaret B. Ferron, LEAD

ATTORNEY, Hayber Law Firm LLC, Hartford, CT;
Michael Palitz, LEAD ATTORNEY, PRO HAC VICE,
Klafter Olsen & Lesser LLP, Rye Brook, NY; Richard
Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm
LLC, Hartford, CT; Justin M. Swartz, PRO HAC VICE,
[*2] Outten & Golden-NY, New York, NY; Seth R.
Lesser, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For Patricia Fernandez, Plaintiff: Justin M. Swartz, PRO
HAC VICE, Outten & Golden-NY, New York, NY; Seth
R. Lesser, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For BeLinda F. Rehn, Plaintiff: Justin M. Swartz, LEAD
ATTORNEY, Outten & Golden-NY, New York, NY;
Seth R. Lesser, LEAD ATTORNEY, Klafter Olsen &
Lesser LLP, Rye Brook, NY.

For Boston Market Corp, Defendant: Craig S. Friedman,
LEAD ATTORNEY, PRO HAC VICE, Jones Day - NY,
New York, NY; Deborah DeHart Cannavino, Littler
Mendelson, P.C.- NH, CT, LEAD ATTORNEY, New
Haven, CT; E. Michael Rossman, LEAD ATTORNEY,
PRO HAC VICE, Jones Day -- Columbus OH, Colum-
bus, OH; Michael J. Gray, LEAD ATTORNEY, PRO
HAC VICE, Jones Day-IL, Chicago, IL; Terri L. Chase,
LEAD ATTORNEY, Jones Day - NY, New York, NY.

**JUDGES:** Hon. Janet C. Hall, United States District
Judge.

**OPINION BY:** Janet C. Hall

## OPINION

**ORDER CONFIRMING CERTIFICATION OF CLASS/COLLECTIVE ACTION AND GRANTING FINAL APPROVAL TO SETTLEMENT, AND GRANTING IN PART AND DENYING IN PART CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' & OPT-INS' MOTION FOR SERVICE PAYMENTS**

On November 21,   [*3] 2011, the parties to this action entered into a Global Settlement Agreement ("Agreement"), and on November 21, 2011, Plaintiffs applied for preliminary approval of that agreement and the terms thereof. On December 8, 2011, this Court granted preliminary approval to the Agreement and provisionally certified the State Law Classes under Rule 23 of the Federal Rules of Civil Procedure and conditionally certified the FLSA Class under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). This Court subsequently directed that notice of the Agreement, its terms, and the applicable procedures and schedules be provided to proposed members of the FLSA Class and to the State Law Classes. All State Law Class Members were given an opportunity to object to the settlement and/or opt out of it.

On April 4, 2012, the parties jointly filed a Motion for Order Confirming Certification of the State Law Classes and FLSA Class and Granting Final Approval of the Settlement ("Final Approval Motion"). This Court held a hearing on that motion on April 13, 2012.

And on April 4, 2012, Class Counsel filed a Motion for an Award of Attorneys Fees and Reimbursement of Costs. Also on April 4, 2012, Named   [*4] Plaintiffs filed a separate Motion for Award of Service Payments. Defendant did not oppose either motion, which the Parties agree are to be considered by the Court separately from the Final Approval Motion. This Court held a hearing on Plaintiffs' and Class Counsel's separate motions on April 13, 2012.

NOW, THEREFORE, IT IS HEREBY ORDERED, upon consideration of the Agreement, the Final Approval Motion, as well as the Parties' briefs, declarations, and oral arguments in support of that motion, and the proceedings in this action to date, as follows:

1. Except as otherwise specified herein, the Court for purposes of this Order adopts all defined terms set forth in the Agreement.

2. This Court has jurisdiction over the subject matter of this litigation and all matters relating thereto, and over all Parties.

3. This Court confirms as final its provisional certification under Fed. R. Civ. P. 23(a) and (b)(3) of the State Law Classes for purposes of settlement and based on the findings in Section II of the Court's December 8, 2011 Order. The State Law classes are defined as follows:

> The New York Class shall mean all individuals who are or were employed by Boston Market as Assistant General Manager,   [*5] Culinary Manager, or Hospitality Manager within the State of New York between January 4, 2004, and December 8, 2011;

> The "Connecticut Class" shall mean all individuals who are or were employed by Boston Market as Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of Connecticut between January 4, 2008, and December 8, 2011.

4. The Court confirms as final its conditional designation of the FLSA Class as an FLSA collective action pursuant to 29 U.S.C. § 216(b) for purposes of settlement and based on the findings in Section III of the Court's December 8, 2011 Order. The Court finds that certain individuals have opted in to this FLSA Class, and that these individuals are similarly situated for purposes of settlement, and the Court therefore certifies the FLSA Class as a collective action. The FLSA Class is defined as follows:

> The "FLSA Class" shall mean all individuals who are or were employed by Boston Market as Assistant General Manager, Culinary Manager, or Hospitality Manager in states other than California, New York, or Connecticut between January 4, 2007 and December 8, 2011, or in Connecticut between January 4, 2007, and January 3, 2008.

5. The Court   [*6] confirms as final the appointment of the following as the class representatives of the FLSA Class and the State Law Classes:

FLSA Class: Named Plaintiffs;

New York Class: Named Plaintiffs;

Connecticut Class: Sherrie Ward and Rahiem Taylor.

The Court likewise confirms as final the appointment of Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran R. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC as Class Counsel of the FLSA Class and the State Law Classes.

6. If, for any reason, this Order and the final judgment entered concurrently herewith do not become Final, this Order, including the certification of the State Law Classes under Rule 23 and the grant of final certification of the FLSA Class under 29 U.S.C. § 216(b), shall be vacated; the Parties shall return to their respective positions in this lawsuit as those positions existed immediately before the Parties executed the Agreement; and nothing stated in the Agreement or any other papers filed with this Court in connection with the settlement shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the [*7] Parties for any purpose in this action or in any other action.

7. The New York & Connecticut Documents and the FLSA Documents (as defined in the Agreement) given, respectively, to the State Law Class Members and the FLSA Class Members, pursuant to this Court's December 8, 2011 Order, constituted the best notice practicable under the circumstances, was accomplished in all material respects, and fully met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution and any other applicable law.

8. This Court grants final approval to the Agreement and the settlement set forth therein. The Court finds that the settlement is fair, reasonable, and adequate in all respects and that it is binding on Plaintiffs, all Opt-Ins, and all State Law Class Members who did not timely opt out pursuant to the procedures set forth in this Court's December 8, 2011 Order and the Agreement. A list of State Law Class Members who timely opted out is attached as Exhibit A. The Court specifically finds that the settlement is rationally related to the strength of the claims in this case given the risk, expense, complexity, and duration of further litigation. This [*8] Court also finds that the Agreement is the result of arms-length negotiations between experienced counsel representing the interests of the Plaintiffs and Defendant, after thorough factual and legal investigation.

9. The Court finds the proposed plan of allocation is rationally related to the relative strengths and weaknesses of the respective claims asserted. The mechanisms and procedures set forth in the Agreement by which Settlement Payments are to be calculated and made to Plaintiffs and Class Members are fair, reasonable and adequate, and payment shall be made according to those allocations and pursuant to the procedure set forth in the

Agreement. The Court finds that the request for costs of settlement administration is reasonable and is approved in an amount of no more than $101,000.

10. By operation of the entry of this Order, all claims described in Section 5 of the Agreement, and in the Opt-In Form and Individual Release executed by certain members of the FLSA Class, are fully, finally and forever released, relinquished and discharged. The Court has reviewed the documents referenced above and finds all of these releases to be fair, reasonable, and enforceable under the FLSA [*9] and Fed. R. Civ. P. 23 and all other applicable law.

11. The Parties entered into the Agreement solely for the purpose of compromising and settling disputed claims. Boston Market in no way admits any violation of law or any liability whatsoever to Plaintiffs and the other Class Members, individually or collectively, liability being expressly denied by Defendant.

12. The Court retains jurisdiction over this matter for purposes of resolving issues relating to administration, implementation, and enforcement of the Agreement.

FURTHERMORE, IT IS HEREBY ORDERED, upon consideration of Class Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Costs, as well as Class Counsel's brief, declarations, and oral argument in support of that motion, as follows:

13. An award of attorneys' fees equal to $999,900.00 (which is 33.33% of the Settlement Amount), plus reimbursement of reasonable litigation costs of $42,000.00 ($37,500 to Outten & Golden LLP; $3,300 to Klafter Olsen & Lesser LLP; and $1,200 to Hayber Law Firm LLC), is approved. Such award is reasonable in light of the effort expended and risks undertaken by Class Counsel, and the results of such efforts including the ultimate [*10] recovery obtained.

14. This fee award shall supersede and extinguish any prior agreement between Class Counsel and any Plaintiff and/or other Class Member concerning attorneys fees and costs associated with the Litigation, and it shall be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of the FLSA Class and the State Law Class.

FINALLY, IT IS HEREBY ORDERED, upon consideration of Plaintiffs' Motion for an Award of Service Payments, as well as their brief, declarations, and oral argument in support of that motion, as follows:

15. Service payments are approved as follows: For Kehou and Fernandez, $12,000 each; for Ward and Taylor, $8,000 each. Together, such service payments represent approximately 1.33% of the Settlement Amount and

2012 U.S. Dist. LEXIS 54695, *

are in addition to the amounts Named Plaintiffs will otherwise receive as their share of the recovery. Such service payment is to compensate Named Plaintiffs for the personal risks borne in bringing the litigation and for the time and effort expended in assisting in the prosecution of the litigation and the ultimate recovery.

DATED: April 17, 2012

/s/ Janet C. Hall

Hon. Janet C. Hall

United States   [*11] District Judge

**EXHIBIT A**

### LIST OF STATE LAW CLASS MEMBERS WHO TIMELY OPTED OUT OF SETTLEMENT

1. SALGADO, JORGE

2. THOMAS, MCQUEEN

**Citation #2**
**2010 U.S. Dist. LEXIS 87644**

LEXSEE



Caution
As of: Jan 15, 2014

**PATRICK deMUNECAS; KEVIN McINTYRE; CARMEN COSTANZO; JOHAN
BOTMA; and LANE SPIGNER, on behalf of themselves and all others similarly
situated, Plaintiffs, -against- BOLD FOOD, LLC; KBFK RESTAURANT CORP.;
LAURENCE KRETCHMER; and BOBBY FLAY, Defendants.**

**09 Civ. 00440 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2010 U.S. Dist. LEXIS 87644**

**August 23, 2010, Decided
August 23, 2010, Filed**

**PRIOR HISTORY:** Demunecas v. Bold Food, LLC,
2010 U.S. Dist. LEXIS 38229 (S.D.N.Y., Apr. 19, 2010)

**CORE TERMS:** settlement, class members, final ap-
proval, class action, awarding, notice, settlement fund,
settlement agreement, tip, weigh, attorneys' fees, multi-
plier, overtime, certification, restaurant, objected, expe-
rienced, lodestar, fee award, misappropriation, misap-
propriated, reimbursement, discovery, contested, paying,
retaliation, class representatives, reasonableness, negoti-
ation, mandatory

**COUNSEL:** [*1] For Patrick deMunecas, on behalf of
themselves and all others similarly situated, Kevin
McIntyre, on behalf of themselves and all others simi-
larly situated, Carmen Costanzo, on behalf of themselves
and all others similarly situated, Johan Botma, on behalf
of themselves and all others similarly situated, Lane
Spigner, on behalf of themselves and all others similarly
situated, Plaintiffs: Justin Mitchell Swartz, Rachel Me-
gan Bien, LEAD ATTORNEYS, Outten & Golden,LLP
(NYC), New York, NY.

For Bold Food, LLC, KBFK Restaurant Corp., Laurence
Kretchmer, Defendants: Carolyn Diane Richmond, Eli
Zev Freedberg, Fox Rothschild, LLP (NYC), New York,
NY; Daniel Adam Schnapp, Fox Rothschild, Attorneys
at Law (NYC), New York, NY.

For Bobby Flay, Defendant: Eli Zev Freedberg, Fox
Rothschild, LLP (NYC), New York, NY.

**JUDGES:** Honorable Deborah A. Batts, United States
District Judge.

**OPINION BY:** Deborah A. Batts

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTIONS
FOR CERTIFICATION OF THE SETTLEMENT
CLASS, FINAL APPROVAL OF THE CLASS AC-
TION SETTLEMENT, APPROVAL OF THE FLSA
SETTLEMENT, APPROVAL OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES,
CLASS REPRESENTATIVE SERVICE A WARDS,
AND RETALIATION PAYMENT**

The Plaintiffs are former and current servers, [*2]
runners, bussers, and bartenders who work or worked at
three New York City restaurants ? Bar Americain, Mesa
Grill, and Bolo. The restaurants are owned or operated
by Defendants Bold Food, LLC, KBFK Restaurant
Corp., Laurence Kretchmer, and Bobby Flay. On January
15, 2009, Plaintiffs Patrick deMunecas, Kevin McIntyre,
and Carmen Costanzo commenced this action as a puta-
tive class action under Federal Rule of Civil Procedure
23 and as a collective action under 29 U.S.C. § 216(b),
bringing claims under the Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL"). (Declaration of Rachel Bien in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Bien Decl.") ¶ 4.) On January 22, 2009, Plaintiffs amended their Complaint, adding Johan Botma and Lane Spigner as Plaintiffs and KBFK Restaurant Corp. and Laurence Kretchmer as Defendants. (*Id.* ¶ 5.) On July 20, 2009, Plaintiffs filed a Second Amended Complaint, adding Bobby Flay as a Defendant. (*Id.* ¶ 6.) Sixty-five others have joined this case as Opt-in Plaintiffs under the FLSA. (Bien Decl.. ¶ 7.)

The parties reached this $800,000 [*3] settlement under the supervision of an experienced employment law mediator, Ruth D. Raisfeld of Alternative Dispute Resolution Services. (*Id.* ¶ 14.) Thereafter, the parties executed a formal written settlement agreement ("Settlement Agreement"). (Bien Decl. Ex. B.)

On March 3, 2010, the Court entered an Order preliminarily approving the settlement; conditionally certifying the settlement class; appointing Outten & Golden LLP as Class Counsel; and authorizing the dissemination of Plaintiffs' Proposed Notice of Settlement and Class Action Settlement Procedure ("Notice"). (Docket No. 49.) The Court entered an Order on April 19, 2010, adjourning the dates for dissemination of the Notice and the final fairness hearing. (Docket No. 51.)

On May 28, 2010, Settlement Services, Inc., a claims administrator, sent the Notice to all class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek up to 33% of the settlement fund for attorneys' fees and their out-of-pocket expenses.

On August 6, 2010, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the [*4] FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards and a Retaliation Payment ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not Object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on August 23, 2010. No Class Member objected to the settlement, and one Class Member requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards and Retaliation Payment, the supporting declarations, the oral argument presented at the August 23, 2010 fairness hearing,

and the complete record in this matter, for the reasons set forth therein and stated on the record at the August 23, 2010 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED: CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement [*5] purposes:

> All servers, runners, bussers, and bartenders who work or have worked at Bar Americain, Mesa Grill, and/or Bolo in New York City for 30 days or more between January 15, 2003 and September 23, 2009.

2. Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 341 Class Members and, thus, joinder is impracticable. *See Consolo Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)* ("[N]umerosity is presumed at a level of 40 members.")

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. All class members raise common issues: (1) whether Defendants misappropriated mandatory gratuities and/or "service charges" that Defendants charged their event customers; (2) whether Defendants misappropriated voluntary customer tips by distributing some to tip ineligible workers; and (3) whether Defendants failed to pay overtime, spread-of-hours, and call-in pay and reimburse uniform expenses. *See McMahon v. Olivier Cheng Catering and Events, LLC, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010);* [*6] *Prasker v. Asia Five Eight LLC, 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010); Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494 (DF), 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009); Mohney v. Shelly's Prime Steak, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009).*

5. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Damassia v.*

*Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). The named plaintiffs suffered the same alleged injury as did the class members--Defendants' failure to pay proper overtime, tips, and mandatory gratuities paid by event customers. *See McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *2, *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2; *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *2; *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4.

6. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4), adequacy, because Plaintiffs' interests are not antagonistic or at odds with those of the class members, *see Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007), and because Plaintiffs' counsel [*7] "has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area," *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2 (quoting *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *2).

7. Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Common factual allegations -- that Defendants failed to pay Plaintiffs and the Class overtime and misappropriated tips and mandatory gratuities -- and a common legal theory -- that Defendants' policies violated the NYLL -- predominate over any factual or legal variations among Class Members. *See McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *2 (finding that common factual allegations that defendants failed to pay overtime wages and misappropriated mandatory gratuities and common legal theory that defendants' policies violated the NYLL satisfied the predominance requirement), *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2 (same); *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3 (same); *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *3 (same); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question for class [*8] treatment"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and this issue "predominates over any individual calculations of overtime wages").

8. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010); *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *3; *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *3; *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3; *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4; *Damassia*, 250 F.R.D. at 161, 164. Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred [*9] within its jurisdiction. Employing the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Clark*, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *3; *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *3; *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3; *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4.

## APPROVAL OF THE SETTLEMENT AGREEMENT

9. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, [*10] courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

11. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class

actions.") "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement"); _In re EVCI Career Colls. Holding Corp. Sec. Litig._, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

12. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." _In re BankAmerica Corp. Sec. Litig._, 210 F.R.D. 694, 700 (E.D. Mo. 2002) [*11] (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. _See Khait v. Whirlpool Corp._, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010); _Prasker_, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *4; _Reyes_, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4; _Mohney_, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4.

### Procedural Fairness

13. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. _See_ Fed. R. Civ. P. 23(e); _Frank_, 228 F.R.D. at 184 (citing _Joel A. v. Giuliani_, 218 F.3d 132, 138-39 (2d Cir. 2000)). The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

14. Plaintiffs' counsel reviewed Defendants' payroll registers and tip sheets, event contracts, New York Department of Labor investigation files, and other relevant documents. (Bien Decl. ¶¶ 8-13.) Plaintiffs' counsel also interviewed current and former employees of Defendants to obtain factual information as part of their investigation of the claims. (_Id._ ¶ 13.)

15. To help resolve the case, the parties enlisted the services of experienced employment mediator, Ruth [*12] D. Raisfeld. Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. _See Wal-Mart Stores_, 396 F.3d at 116; 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5; _Prasker_, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *4.

### Substantive Fairness

16. The settlement is substantively fair. All of the factors set forth in _City of Detroit v. Grinnell Corp._, 495 F.2d 448 (2d Cir. 1974), which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

17. The "_Grinnell_" factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks [*13] of litigation. _Grinnell_, 495 F.2d at 463

18. Litigation through trial would be complex, expensive, and long. Therefore, the first _Grinnell_ factor weighs in favor of final approval.

19. The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and estimated each class member's award. The Notice also informed class members that they could object to or exclude themselves from the settlement, and explained how to do so. No class member objected to the Settlement, and only one class member requested exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. _Wright v. Stern_, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted-out). This favorable response recommends final approval. _See Khait_, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5 (granting final approval where no class members objected and only two class members opted out); _Prasker_, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *4 (granting final approval where no class members objected and only two class members opted out); _Damassia v. Duane Reade, Inc._, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) [*14] (finding settlement to be fair, reasonable, and adequate where no class members objected and only one class member opted out). The second _Grinnell_ factor weighs in favor of final approval.

20. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." _In re Warfarin Sodium Antitrust Litig._, 391 F.3d at 537. Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery. (Bien Decl. ¶¶ 8-13.) The parties' 19-hour mediation session allowed them to fur-

ther explore the claims and defenses. (*Id.* ¶15.) The third *Grinnell* factor weighs in favor of final approval.

21. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' misappropriated tip and service charge claims presents risk. The settlement [*15] eliminates this uncertainty. See *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *5; *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *5. The fourth *Grinnell* factor weighs in favor of final approval.

22. The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and briefing. If the Court granted a contested class certification motion, Defendants could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to decertify, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The fifth *Grinnell* factor weighs in favor of final approval.

23. It is not certain that Defendants could withstand a greater judgment. Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Here, the Settlement Agreement eliminated the risk of collection by requiring Defendants to pay the Fund into escrow on a date certain. (Bien Decl. Ex. B (Settlement Agreement) [*16] ¶ 3.1(B).) This factor also favors final approval. *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *5 (settlement agreement eliminated risk of collection by requiring payment of settlement fund into escrow).

24. The substantial amount of the settlement weighs in favor of final approval The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor favors final approval.

## APPROVAL OF THE FLSA SETTLEMENT

25. The Court hereby approves the FLSA settlement.

26. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *6 [*17] (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)).

27. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1353-54). "If the proposed settlement reflects a reasonable compromise over contested issues," the settlement should be approved. *Id.*

28. The FLSA settlement meets the standard for approval. The settlement was the result of contested litigation and arm's length negotiation. (Bien Decl. ¶P 8-19.) Recognizing the uncertain legal and factual issues involved, the parties engaged in a 19-hour mediation session with an experienced mediator. (*Id.* at ¶ 15)

## DISSEMINATION OF NOTICE

29. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices). This Court finds that the Notice fairly and adequately advised [*18] class members of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on August 23, 2010. Class Members were provided the best notice practicable under the circumstances.

30. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

31. The Court confirms Settlement Services, Inc. ("SSI") as the Claims Administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND A WARD OF SERVICE PAYMENTS TO NAMED PLAINTIFFS

32. On March 3, 2010, the Court appointed Outten & Golden LLP as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

33. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

34. Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions. See *Clark*, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6-7; [*19] *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6; *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, at *6 (S.D.N.Y. July 24, 2009) (noting that O&G "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3; *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 94544, at *12-13 (E.D.N.Y. Oct. 2, 2009). The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $264,000.00 in attorneys' fees, which is thirty-three percent (33%) of the Fund.

36. In this Circuit, the "percentage-of-recovery" method is the "trend." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 122; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at * 7; *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4; *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5; [*20] *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

37. Although the Court has discretion to award attorneys fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, see *Frank*, 228 F.R.D. at 189. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3

(S.D.N.Y. Jan. 7, 2010). The FLSA and the NYLL are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. See *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8; *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6; *Sand*, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3.

38. In class action wage and hour lawsuits, public policy favors a common fund attorneys' [*21] fee award. See *Frank*, 228 F.R.D. at 189. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980), attorneys who fill the private attorney general role must be adequately compensated for their efforts. *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *6; *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *6 (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000)); *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6.

39. Common fund recoveries are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Many individual litigants, [*22] including the class members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).

40. "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams*, 605 F.3d at 246. Here, Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation, and is therefore entitled to an attorneys' fee award that exceeds their lodestar amount in this case.

41. Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is

"consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008). *See Parker v. Jekyll & Hyde Entm't Holdings, LLC.*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (awarding class counsel [*23] 33% of $745,000 fund in FLSA and NYLL restaurant case); *Clark*, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8-9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7 (awarding class counsel 33% of $400,000 settlement fund in FLSA and NYLL tip misappropriation restaurant case); *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Prasker*, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in FLSA and NYLL tip misappropriation restaurant case); *Westerfield*, 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4-5 (awarding 30% of $38,000,000 fund in nationwide overtime suit); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576(PAC), 2009 U.S. Dist. LEXIS 85955, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009)(awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Reyes*, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3-4 (awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4-5 (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) [*24] (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33 1/3% fee of fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076(PNL), 1993 U.S. Dist. LEXIS 5211, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

42. Although Arbor *Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports Class Counsel's request for approximately 33% of the fund because "reasonable, paying client[s]," 493 F.3d 110, 111-12 (2d Cir. 2007), typically pay one-third of their recoveries under private retainer agreements. *Clark*, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *9.

43. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) weigh in favor of the requested fee award.

44. Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the Court finds that the multiplier that Class Counsel seek is reasonable. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) [*25] (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 473 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905 (MBM), 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).

45. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *See Parker*, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2 ("as class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time").

46. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $12,118.00. Courts typically [*26] allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's un-reimbursed expenses -- mediation fees, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research -- are reasonable and were incidental and necessary to the representation of the Class.

47. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

48. The Court finds reasonable service awards of $5,000 each for Class Representatives Patrick deMunecas, Kevin McIntyre, Carmen Costanzo, Johan Botma, and Lane Spigner. These amounts shall be paid from the Settlement Fund.

49. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *See Parker, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *1* ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred [*27] by named plaintiffs and compensating them for their additional efforts."); *Clark, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *9; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8-9, Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *9; Mohney, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *6; Roberts v. Texaco, Inc., 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997)* ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.") *See also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions,* 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregating claims to protecting civil rights and wage and hour rights).

50. The Court also finds that a payment of $15,000 from the Fund to settle Plaintiff [*28] deMunecas' retaliation claims is reasonable.

## CONCLUSION

51. The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

52. Within 15 days of the Effective Date, Defendants shall distribute the funds in the settlement account by making the following payments in the order below:

> a. Paying Class Counsel thirty-three percent of the Fund ($264,000);

> b. Reimbursing Class Counsel for $12,118.00 in litigation costs and expenses;

> c. Paying service awards of $5,000 each to Named Plaintiffs Patrick deMunecas, Kevin McIntyre, Carmen Costanzo, Johan Botma, and Lane Spigner;

> d. Paying Patrick deMunecas $15,000 in settlement of his individual retaliation claims;

> e. Paying the remainder of the funds currently in the settlement account to class members in accordance with the allocation plan described in the Settlement Agreement.

53. Defendants shall provide Class Counsel with proof of mailing each check to each class member, as described in the Settlement Agreement.

54. The Court retains jurisdiction over this action for the purpose [*29] of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 23rd day of August, 2010.

/s/ Deborah A. Batts

Honorable Deborah A. Batts

United States District Judge

**Citation #3**
**2000 U.S. Dist. LEXIS 19367**

LEXSEE



Analysis
As of: Jan 15, 2014

## IN RE: FINE HOST CORPORATION SECURITIES LITIGATION

### MDL DOCKET NO. 1241, MASTER DOCKET NO. 3:97-CV-2619 (JCH)

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

### 2000 U.S. Dist. LEXIS 19367; Fed. Sec. L. Rep. (CCH) P91,316

#### November 8, 2000, Decided

**DISPOSITION:** [*1] Application of plaintiffs' counsel for an award of fees GRANTED in the amount of $ 3,106,250. Plaintiffs' request for a reimbursement of costs and expenses GRANTED in the amount of $ 137,477.36.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Class action plaintiffs settled their consolidated securities litigation which resulted in the creation of a settlement fund. Plaintiffs moved for an award of attorney fees in an amount equal to one third of the settlement fund, and for an award of costs.

**OVERVIEW:** Plaintiffs settled the securities litigation prior to trial and asserted that one third of the settlement fund represented a reasonable attorney fee. The court first held that the amount of reasonable attorney fees could be calculated using either a percentage of the settlement fund or determining a lodestar amount based on hourly rates and actual time expended. The court then held that the fees requested by plaintiffs were excessive and unreasonable in view of the early settlement of the action which posed small risk of failing. The court reduced plaintiffs' requested percentage by approximately one half, noting the complexity of the issues and the quality of the representation by plaintiffs' attorneys. Using the lodestar method to verify the reasonableness of the percentage award, the court found that reducing the lodestar amount to account for excessive hourly rates, and then applying a multiplier to increase the award based on the difficulties in achieving settlement, resulted

in an award substantially similar to the court's percentage award.

**OUTCOME:** Motion for fees and costs was granted, except that the one third percentage of the settlement fund requested by plaintiffs was reduced by approximately one half. The early settlement of the action rendered plaintiffs requested percentage unreasonable and excessive, and calculating the award using the alternative lodestar method indicated that the reduced percentage was proper.

**CORE TERMS:** lodestar, settlement, attorneys' fees, citation omitted, multiplier, common fund, hourly rate, fee award, class action, common fund, reasonableness, expended, reimbursement, settlement fund, skill, class members, methods of calculating, lodestar' figure, cross check', policy considerations, calculation, contingency, familiarity, meritorious, calculated, benchmark, excessive, windfall, inter alia, rates charged

**LexisNexis(R) Headnotes**

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule*
*Civil Procedure > Appeals > Remands*
*Contracts Law > Types of Contracts > Settlement Agreements*
[HN1]A party that has secured a benefit on behalf of a class of people is entitled to recover its costs, including attorneys' fees, from a common fund created as part of a settlement agreement. In implementing the common fund doctrine, courts have used two methods of calculating

attorneys' fees. Historically, the traditional method of calculating fees in such cases was as a percentage of the fund. However, the alternate method, the lodestar, is a response to perceived problems with the percentage method. Under the lodestar method, the court first multiplies the number of hours expended by each attorney by the hourly rate normally charged for similar work by attorneys of like skill in the area, then multiplies this base or lodestar rate by a multiplier that takes into account other less objective factors, such as the risk of litigation, the complexity of the issues, and the skill of the attorneys.

*Civil Procedure > Class Actions > Class Counsel > Fees*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN2]Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund class action cases.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN3]An attorney fee award should be assessed based on scrutiny of the unique circumstances of each case, and a jealous regard to the rights of those who are interested in the common fund.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN4]Whether calculated pursuant to the lodestar or the percentage method, the attorney fees awarded in common fund cases may not exceed what is reasonable under the circumstances.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
[HN5]What constitutes a reasonable attorney fee is properly committed to the sound discretion of the district court, and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*

[HN6]No matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund attorney fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN7]In determining a reasonable attorney fee, the quality of representation is best measured by results, and such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement. Moreover, the risk of success is perhaps the foremost factor to be considered in determining whether to award an enhancement under a lodestar calculation. For example, public policy considerations justify the award of no contingency allowance in a case that was risky simply because it was of highly questionable merit, and similarly there are cases where the risk is so slight that any enhancement for the contingent nature of the fee must be minimal.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
*Legal Ethics > Client Relations > Attorney Fees > Excessive Fees*
[HN8]In determining a reasonable attorney fee, the lodestar figure should be in line with those hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. It is well-established that the prevailing community the district court should consider to determine the lodestar figure is the district in which the court sits.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN9]In determining a reasonable attorney fee, the court may, in its discretion, increase or decrease the lodestar figure by examining such factors as the quality of counsel's work, the risk of the litigation, and the complexity of the issues. The most significant factor in deciding whether to apply a multiplier greater than 1.0 is the risk of the litigation, since awarding only the lodestar would give inadequate encouragement to counsel who would represent meritorious but risky claims. However, as the chance of success on the merits or by settlement increases, the justification for using a risk multiplier decreases. In addition, a multiplier may reflect the novelty and

complexity of the legal issues involved and quality of representation.

**COUNSEL:** For BERNARD INDART, plaintiff: J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT.

For BERNARD INDART, plaintiff: Phyllis M. Parker, Berger & Montague, Philadelphia, PA.

For BERNARD INDART, plaintiff: Peter A. Lennon, Joseph P. Guglielmo, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY.

For DOREEN STELLKE LEVINE, MARK ZINN, DONNA GOODE, ROLAND BURKE, JAMES CO-SENTINO, PAUL ZWYNENBURG, RODMAN INS AGENCY, EDWARD PIRRO, ROBERT R. GLISSON, PETER P. DEBIASE, COSMO DEBIASE, TERRY WRIGHT, TAAM ASSOC. INC, RICHARD OREN-STEIN, ROBERT ASKEW, MAINSTAY FUNDS, MAINSTAY VP SERIES FUND, INC, NEW YORK LIFE INSURANCE COMPANY, consolidated plaintiffs: Peter A. Lennon, Joseph P. Guglielmo, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY.

For MARK ZINN, JAMES COSENTINO, RODMAN INS AGENCY, EDWARD PIRRO, ROBERT R. GLISSON, PETER P. DEBIASE, COSMO DEBIASE, TAAM ASSOC. INC, consolidated plaintiffs: J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT.

For MARK ZINN, DONNA GOODE, ROLAND BURKE, JAMES COSENTINO, PAUL ZWYNEN-BURG, RODMAN INS AGENCY, EDWARD PIRRO, ROBERT R. GLISSON, PETER P. DEBIASE, COSMO DEBIASE, TERRY WRIGHT, TAAM ASSOC. INC, RICHARD ORENSTEIN, ROBERT ASKEW, MAIN-STAY FUNDS, MAINSTAY VP SERIES FUND, INC, NEW YORK LIFE INSURANCE COMPANY, consolidated plaintiffs: Phyllis M. Parker, Berger & Montague, Philadelphia, PA.

For DONNA GOODE, ROLAND BURKE, consolidated plaintiffs: Jeffrey S. Nobel, Schatz & Nobel, Hartford, CT.

For PAUL ZWYNENBURG, RICHARD ORENSTEIN, ROBERT ASKEW, consolidated plaintiffs: David Randell Scott, Colchester, CT.

For TERRY WRIGHT, consolidated plaintiff: Andrew M. Schatz, Schatz & Nobel, Hartford, CT.

For MAINSTAY FUNDS, MAINSTAY VP SERIES FUND, INC, NEW YORK LIFE INSURANCE COM-PANY, consolidated plaintiffs: James E. Tolan, Nancy Prahofer, Joel H. Levitin, Steven D. Isser, Dechert Price & Rhoads, New York, NY.

For FINE HOST CORP, defendant: Shaun S. Sullivan, David B. Fein, Wiggin & Dana, New Haven, CT.

For FINE HOST CORP, defendant: Suzanne Ellen Wachsstock, Wiggin & Dana, Stamford, CT.

For RICHARD E. KERLEY, defendant: Richard F. Lawler, Whitman, Breed, Abbott & Morgan, Greenwich, CT.

For RICHARD E. KERLEY, defendant: Philip M. Smith, David S. Patterson, Whitman, Breed, Abbott & Morgan, New York, NY.

For CATHERINE B. JAMES, defendant: Timothy G. Ronan, Cummings & Lockwood, Stamford, CT.

For CYNTHIA J. ROBBINS, defendant: Carl H. Loe-wenson, Jr., Heather M. Benedict, Morrison & Foerster, New York, NY.

For NELSON A. BARBER, defendant: Eugene J. Riccio, Gulash & Riccio, Bridgeport, CT.

For NELSON A. BARBER, defendant: Jack A. Gordon, John M. DeMilt, Kent, Beatty & Gordon, New York, NY.

For MARY B. GRIFFIN, defendant: Margaret M. Donohoe, J. Jay Lobell, Howard, Smith & Levin, New York, NY.

For CYNTHIA J. ROBBINS, consolidated defendant: Carl H. Loewenson, Jr., Heather M. Benedict, Morrison & Foerster, New York, NY.

For CATHERINE B. JAMES, consolidated defendant: Timothy G. Ronan, Cummings & Lockwood, Stamford, CT.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINION BY:** Janet C. Hall

**OPINION**

**RULING ON APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES [DKT. NO. 210]**

Case 3:12-cv-00831-JCH   Document 111-1   Filed 01/15/14   Page 34 of 54

2000 U.S. Dist. LEXIS 19367, *; Fed. Sec. L. Rep. (CCH) P91,316

Plaintiffs in this consolidated securities class action have applied for an award of attorneys' fees and reimbursement of expenses in connection with the settlement of the consolidated action. *See* Dkt. No. 210. On October 26, 2000, the court entered an Order and Final Judgment approving the class action settlement reached by the parties. *See* Dkt. No. 211. The plaintiffs now seek attorneys' fees in the amount of one-third of the settlement fund of $ 17,750,000, or $ 5,916,666.67. In addition, the plaintiffs seek costs and expenses of $ 137,477.36. The court has been informed by counsel for the plaintiffs that no objections to the proposed fee award have been received. [1] Notice of the proposed settlement mailed to class members and published in the *Wall Street Journal* indicated that the plaintiffs' attorneys [*2] were seeking an award of one-third of the settlement fund and reimbursement for expenses up to $ 225,000.

> 1  The Court of Appeals, however, has cast considerable doubt upon the importance of this fact:
>
>> And the class members--the intended beneficiaries of the suit--rarely object. *See* Federal Judicial Center, Empirical Study of Class Action in Four Federal District Courts 76 (1996). Why should they? They have no real incentive to mount a challenge that would result in only a "minuscule" pro rata gain from a fee reduction.
>
> *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (citation omitted).

## I. STANDARD

[HN1]A party that has secured a benefit on behalf of a class of people is entitled to recover its costs, including attorneys' fees, from a common fund created as part of a settlement agreement. *See Savoie v. Merchants Bank,* 166 F.3d 456, 460 (2d Cir. 1999) ("*Savoie II*") (citing *Savoie v. Merchants Bank,* 84 F.3d 52, 56 (2d Cir. 1996) [*3] ("*Savoie I*")). In implementing the common fund doctrine, courts have used two methods of calculating attorneys' fees. Historically, the traditional method of calculating fees in such cases was as a percentage of the fund. *See In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320, 325 (E.D.N.Y. 1993) (citing, *inter alia, Cent. R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 28 L. Ed. 915, 5 S. Ct. 387 (1885)).

In the 1970's, however, the Third Circuit devised an alternate method, the "lodestar," as a response to perceived problems with the percentage method. [2] *See Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973), *appeal following remand,* 540 F.2d 102 (3d Cir. 1976). Under the lodestar method, the court first multiplies the number of hours expended by each attorney by the hourly rate normally charged for similar work by attorneys of like skill in the area, then multiplies this "base" or "lodestar" rate by a "multiplier" that takes into account "other less objective factors, such as the 'risk of litigation,' the complexity of the issues, and the skill of the attorneys." *Savoie II,* 166 F.3d at 460 [*4] (quoting *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir. 1977) ("*Grinnell II*")). At the time that the Third Circuit and other courts initially adopted the lodestar method, the Second Circuit also adopted it for common fund cases in its decisions in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 468-74 (2d Cir. 1974) ("*Grinnell I*") and *Grinnell II,* 560 F.2d at 1098-1100. The *Grinnell* decisions, while not specifically stating that the percentage method could not be used, directed a district court "to begin its inquiry on remand by first calculating the basic value of appellee's services," and emphasized that "district courts should place primary reliance on the value of the time actually expended by fee applicants as determined by normal billing rates." *Grinnell II,* 560 F.2d at 1098, 1099.

> 2  The percentage approach initially had begun to be seen as a problem because courts ran the risk of creating a "windfall" for attorneys that bore no relationship to "the actual effort made by the attorney to benefit the class." *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1099 (1977) ("Grinnell II"). On the other hand, the percentage approach also "has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases." *Savoie II,* 166 F.3d at 460-61.

[*5]  Since that time, the Third Circuit has repudiated its earlier endorsement of the lodestar method and returned to a percentage-based analysis. Following the Supreme Court's observation in dicta that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund," *Blum v. Stenson,* 465 U.S. 886, 900 n.16, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984), a Third Circuit Task Force convened by the author of the *Lindy* opinion rejected the lodestar method and recommended a return to percentage-based calculations. *See Court Awarded Attorney Fees: Report of the Third Circuit Task Force,* 108 F.R.D. 237 (1985) ("Third Circuit Task Force"). In rejecting the lodestar method, the Third Circuit Task Force noted that the lodestar method "unnecessarily overtaxed the judicial system, created an illusory sense of mathematical precision leading to disparate results, was easily manipulated by judges, and creat-

ed disincentives to an early settlement." *See Crazy Eddie, 824 F. Supp. at 325* (citing Third Circuit Task Force, 108 F.R.D. at 246-49); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000) [*6] (under the lodestar method, "there was an inevitable waste of judicial resources").

Under a percentage-of-the-fund method, lawyers have no incentive to increase the number of billable hours for which they would be compensated under the lodestar method. *Savoie II*, 166 F.3d at 460-61. Similarly, the percentage method does not encourage plaintiffs' counsel to drag their feet in settling a case, since plaintiffs' counsel's fees do not increase with delay. *Id. at 461*. Moreover, it has been argued that, by aligning the lawyers' interests with those of their clients, the percentage or "contingent fee" method gives lawyers an incentive to negotiate and litigate vigorously on behalf of their clients.

Courts in this Circuit have utilized both types of fee awards. *Compare Chatelain v. Prudential-Bache Secs., Inc.*, 805 F. Supp. 209, 215-16 (S.D.N.Y. 1992) (declining to use lodestar and applying "straight percentage of recovery method") and *In re Union Carbide Corp. Consumer Prods. Bus. Secs. Litig.*, 724 F. Supp. 160, 166 (S.D.N.Y. 1990) (finding lodestar "is not an ideal way to fix fees") *with In Re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987) [*7] (noting general practice of applying lodestar based on hourly rates within district in which court sits) and *Wallace v. Fox*, 7 F. Supp. 2d 132, 138-39 (D. Conn. 1998) (finding lodestar still required in Second Circuit despite the Supreme Court's statement suggesting that a percentage approach is acceptable in *Blum*, 465 U.S. 886, 79 L. Ed. 2d 891, 104 S. Ct. 1541). However, "since at least the late 1980s[,] the trend within this circuit has been toward the percentage-of-recovery method." *Crazy Eddie*, 824 F. Supp. at 325 (citations omitted). A number of district courts in this Circuit have applied the percentage method of calculating fees in common fund cases in recent years. These courts have read footnote 16 of the Supreme Court's decision in *Blum*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891, as authorizing the use of a percentage method in common fund cases and have apparently rejected the view espoused in *Wallace*, 7 F. Supp. 2d at 138-39, that "the Second Circuit continues to require use of the lodestar-multiplier method" as laid out in Grinnell. See, e.g., *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, 1998 WL 661515, [*8] at *6 (E.D.N.Y. 1998) (noting that despite *Grinnell* decisions, percentage method "gained favor" in late 1980s and applying percentage method even though Eastern District plan requiring percentage approach had expired). Mindful of the Second Circuit's admonitions in *Grinnell I* that the purpose of the common fund doctrine was the com-

pensation of the attorney for the reasonable value of services benefitting the claimant, courts have also used the lodestar method as a "cross-check" to ensure that the percentage fees are not unreasonably high. *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

The Second Circuit finally settled the uncertainty surrounding the method that district courts should use to assess attorneys' fees in common fund class actions by [HN2]holding in *Goldberger v. Integrated Res., Inc.*, "that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *209 F.3d at 50*. The Court of Appeals held that "*Agent Orange*[, 818 F.2d at 232,] does not bar a return to this Circuit's earlier practice of [*9] setting fees on a percentage of the fund basis." *Id. at 49* (citations omitted). The Court of Appeals noted that "the express goal of the *Grinnell* opinions was to prevent unwarranted windfalls for attorneys," and "so long as that object is achieved, we see no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation." *Id.* (quoting *Savoie II*, 166 F.3d at 461 n. 4, and citing *Grinnell II*, 560 F.2d at 1098-1099, and *Grinnell I*, 495 F.2d at 469-71). Accordingly, in the Second Circuit, "the lodestar approach is an accepted but not exclusive methodology in common fund cases." *Id.* (citations omitted). The Court of Appeals observed in *Goldberger* that "there are cases 'where [the district court] can calculate the relevant parameters (hours expended and hourly rate) more easily than it can determine a suitable percentage to award,'" and, at all events, "the lodestar remains useful as a baseline even if the percentage method is eventually chosen." *209 F.3d at 50* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 at 821, and citing *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 324 (D.N.J. 1997)). [*10] "Indeed, [the Second Circuit] encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (quoting *General Motors*, 55 F.3d at 820).

The court is aware that, when applying a percentage, some courts have adopted 25% as a "bench mark" that may then be adjusted in light of the effort expended by class counsel, the risk assumed by class counsel, the result obtained, the value of other benefits to the class, and the absence of objections from class members. *See, e.g., Crazy Eddie*, 824 F. Supp. at 326 (citing *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 688 (M.D. Ala. 1988) (surveying cases)). However, the Court of Appeals in *Goldberger* rejected the notion of beginning a common fund attorneys' fees analysis with a 25% benchmark, noting that, *inter alia*, "even a theoretical construct as flexible as a 'benchmark' seems to offer an

Case 3:12-cv-00831-JCH  Document 111-1  Filed 01/15/14  Page 36 of 54

2000 U.S. Dist. LEXIS 19367, *; Fed. Sec. L. Rep. (CCH) P91,316

all too tempting substitute for the searching assessment that should properly be performed in each case" and "starting an analysis with a benchmark could easily lead to routine windfalls where the recovered fund [*11] runs into the multi-millions." 209 F.3d at 52. Moreover, the Court of Appeals rejected the "assumption that there is a substantial contingency risk in every common fund case." Id. The Court of Appeals cautioned that it was "not suggesting that compensation for risk is never permitted, merely that it is not--under either the percentage or lodestar methods--an appropriate starting assumption." Id. The Court of Appeals was driven to this conclusion by the observation that, "even where there is some contingency risk but recovery remains virtually certain, we question whether a fully informed group of plaintiffs able to negotiate collectively would routinely agree to pay their lawyers a fee of 25% of a multi-million dollar settlement." Id. Thus, the Second Circuit held that it "continue[s] to approach fee awards with an eye to moderation." Id. at 53 (quoting Grinnell II, 560 F.2d at 1099 (quoting Grinnell I, 495 F.2d at 470)). Accordingly, the Court of Appeals "adhered to [its] prior practice that [HN3]a fee award should be assessed based on scrutiny of the unique circumstances of each case, and 'a jealous regard [*12] to the rights of those who are interested in the fund.'" Id. (quoting Grinnell I, 495 F.2d at 469, and citing Grinnell II, 560 F.2d at 1098- 99).

Thus, [HN4]"whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." 209 F.3d at 47 (citations omitted). "[HN5]What constitutes a reasonable fee is properly committed to the sound discretion of the district court, . . . and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." Id. (citations omitted). According to the Second Circuit, "[HN6]no matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Id. at 50 (quoting Union Carbide, 724 F. Supp. at 163 (summarizing [*13] Grinnell opinions)).

The court finds it appropriate to apply the percentage method in this case, while remaining cognizant of the policy considerations favoring the lodestar calculation and using the lodestar documentation "as a 'cross check' on the reasonableness of the requested percentage." [3] The court now takes up consideration of the plaintiff's request for a fee award of one-third of the common fund, plus costs.

3 In Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000), the Court of Appeals noted that, "of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." 209 F.3d at 50 (citing In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 342 (3d Cir. 1998)). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." Id.

## II. DISCUSSION

As noted [*14] above, plaintiffs seek one-third of the $ 17,750,000 class action settlement fund in attorneys' fees (approximately $ 5.9 million) and reimbursement of expenses totaling $ 137,477.36. The court finds that one-third is an excessive percentage, both under a percentage-of-the-common-fund analysis and when cross-checked against a lodestar determination.

Turning first to the time and labor expended by counsel, the court notes that, while it is undisputed that counsel for the plaintiffs conducted extensive discovery and litigated both the Motion to Dismiss and the class certification issue, it cannot be said that these efforts were out of the ordinary. In fact, this case settled before proceeding to the trial stage, or even the summary judgment stage, when a more thorough presentation of the facts and the law would certainly have been required.

On the other hand, the court finds that the magnitude and complexities of the litigation and the quality of representation by plaintiffs' counsel weigh in favor of a percentage award within a close range of the one-third award requested. The Court of Appeals has held that "[HN7]the quality of representation is best measured by results, and that such [*15] results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" 209 F.3d at 55 (citation omitted). Moreover, the Second Circuit also noted that it has "historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement" under a lodestar calculation. Id. at 54 (citation omitted). In this context, "risk falls along a spectrum, and should be accounted for accordingly." Id. "For example, [the Second Circuit has] held that public policy considerations justified the award of no contingency allowance in a case that was risky simply because it was of 'highly questionable merit,'" and "similarly, there are cases where the risk is 'so slight' that any enhancement for the contingent nature of the fee must be 'minimal.'" Id. (citations omitted).

Case 3:12-cv-00831-JCH   Document 111-1   Filed 01/15/14   Page 37 of 54

2000 U.S. Dist. LEXIS 19367, *; Fed. Sec. L. Rep. (CCH) P91,316

As the court found in approving the settlement, this case involved many complex issues, particularly after Fine Host declared bankruptcy, which threatened the plaintiffs' chances for a successful recovery. Moreover, the plaintiffs' claims were met with difficult defenses, presented vigorously by able and experienced [*16] defense counsel. Overall, the court finds that the $ 17.5 million settlement is an excellent recovery given the difficulties and defenses which made a recovery of the $ 100 million that plaintiffs' counsel estimated in actual damages highly uncertain. The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain.

The court also does not find that this case was of highly questionable merit, as evidenced by Fine Host's decision not to file a motion to dismiss the plaintiff's Rule 10b-5 action. This factor, however, cuts both for and against a substantial award of attorneys' fees to the plaintiffs, since the court should seek to encourage able attorneys to bring meritorious claims, but meritorious claims present a lesser risk of failing to make any recovery. Moreover, because of the relatively early stage of the litigation and because, as the Second Circuit has observed, "anecdotal evidence tends to confirm the conclusion" of "at least one empirical study . . . that 'there appears to be no appreciable risk of non-recovery' in securities class actions, because 'virtually all cases are settled, [*17] '" the court finds that the one-third fee request by the plaintiffs is excessive and unreasonable in this case. *Id.* at 52 (quoting Janet Cooper Alexander, Do the Merits Matter? A Study of Settlements in Securities Class Actions, 43 Stan. L. Rev. 497, 578 (1991)). Nevertheless, given the difficulty of the issues litigated, coupled with the highly contested nature of the litigation and the substantial benefit received by the class, this court concludes that the plaintiffs should be awarded 17.5% of the settlement fund in attorneys' fees, or $ 3,106,250.

Even if this court had applied the lodestar method, an award of approximately $ 3.1 million would appropriately compensate plaintiffs' counsel. Class counsel have calculated their lodestar as $ 1,981,009.25 for 6,158 hours. The court has not exhaustively scrutinized the fee entries submitted by the plaintiffs, but instead relies upon its familiarity with the case to utilize an approximate lodestar analysis as a cross check on the reasonableness of a 17.5% fee award.

"[HN8]The 'lodestar' figure should be 'in line with those [hourly rates] prevailing in the community for similar services by lawyers of reasonably comparable [*18] skill, experience, and reputation.'" *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum*, 465 U.S. at 896 n.11). "It is well-established that the 'prevailing community' the district court should consider

to determine the 'lodestar' figure is 'the district in which the court sits.'" *Id.* (quoting *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). The court finds that some of the hourly rates charged by the plaintiffs' counsel and support staff are excessive in comparison to rates charged in Connecticut, *e.g.*, $ 575/hour for a senior attorney and $ 150/hour for a paralegal. *See Wallace*, 7 F. Supp. 2d 132 (reducing requested hourly rate of $ 550 to maximum of $ 300). However, other rates charged by plaintiffs' counsel fall in line with the hourly rates normally charged for similar work by attorneys of like skill in Connecticut. Thus, the court finds that applying the lodestar method in this case would, at a minimum before analyzing the reasonableness of each fee entry, require a recalculation of counsel's hourly rates. Basing the reasonable hourly rates for the plaintiffs' [*19] attorneys partly on those applied by other courts in Connecticut and New York, *see, e.g., Wallace*, 7 F. Supp. 2d 132 (creating table of fees based on court's experience); *In re Bausch & Lomb, Inc. Secs. Litig.*, 183 F.R.D. 78, 84 (W.D.N.Y. 1998) (noting that New York State Bar Association 1997 Desktop Reference on the Economics of Law Practice in New York provided $ 225 median hourly rate for all attorneys in New York City), and partly on the court's own experience in Connecticut practice, the court would reduce the plaintiffs' total lodestar figure by 40% to approximate this inflation in rates, to approximately $ 1,188,600. [4]

> 4   This is admittedly a rough approximation, since the court is not engaged in a full lodestar analysis, but merely "checking" the reasonableness of the percentage method result.

"[HN9]The court may, in its discretion, increase or decrease this figure by examining such factors as the quality of counsel's work, the risk of the litigation and the complexity of [*20]  the issues." *Agent Orange*, 818 F.2d at 232 (citation omitted). The most significant factor in deciding whether to apply a multiplier greater than 1.0 is the risk of the litigation, since awarding only the lodestar would give inadequate encouragement to counsel who would represent meritorious but risky claims. *Id.* at 236. However, "as the chance of success on the merits or by settlement increases, the justification for using a risk multiplier decreases." *Id.* (citation omitted). In addition, a multiplier may reflect the novelty and complexity of the legal issues involved and quality of representation. *Savoie II*, 166 F.3d at 460.

Based on the court's familiarity with the litigation and the difficulties presented in achieving a settlement following Fine Host's bankruptcy, the court finds that the application of a multiplier would be appropriate. In addition to the factors discussed above in relation to a percentage award, the court notes that, unlike the situation

in *Goldberger*, counsel here had no prior regulatory or criminal proceeding upon which to draw in gathering facts or refining legal arguments. On the basis of the analysis [*21] of the factors delineated in the Second Circuit's *Goldberger* and *Savoie II* decisions, the court finds that the multiplier that would result from an attorneys' fee award of 17.5% of the recovery, of approximately 2.6, falls within the range of appropriate multipliers for this type of case. *See Wallace, 7 F. Supp. 2d at 141* (applying 1.5 multiplier in shareholder derivative suit); *Crazy Eddie, 824 F. Supp. at 327* (applying 1.72 multiplier in securities fraud settlement); *Union Carbide, 724 F. Supp. at 170* (applying 2.3 multiplier for steering committee counsel and 1.5 multiplier for other attorneys involved where chance of recovery was relatively high). Thus, even on a lodestar analysis, the court finds that an award of $ 3,106,250 million is fair and reasonable in light of the factors the Second Circuit has outlined in, most recently, *Goldberger*.

Finally, the court has reviewed the costs for which the plaintiffs seek reimbursement. The court finds that

these disbursements are reasonable in the context of this litigation. Accordingly, in addition to a fee award of 17.5% of the settlement fund, the court awards the plaintiffs [*22] costs and expenses of $ 137,477.36.

## III. CONCLUSION

Accordingly, the application of plaintiffs' counsel for an award of fees is GRANTED in the amount of $ 3,106,250. In addition, the plaintiffs' request for a reimbursement of costs and expenses is GRANTED in the amount of $ 137,477.36.

## SO ORDERED.

Dated at Bridgeport, Connecticut this 8th day of November, 2000.

/s/

Janet C. Hall

United States District Judge

**Citation #4**
2012 U.S. Dist. LEXIS 163615

LEXSEE



Analysis
As of: Jan 15, 2014

**JAMES POSTIGLIONE, et al, Plaintiffs, v. CROSSMARK, INC., Defendant.**

**CIVIL ACTION No. 11-960**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2012 U.S. Dist. LEXIS 163615**

**November 14, 2012, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at Owens v. Crossmark, Inc., 2013 U.S. Dist. LEXIS 90325 (E.D. Pa., June 27, 2013)
Related proceeding at Burford v. Crossmark, Inc., 2013 U.S. Dist. LEXIS 90328 (E.D. Pa., June 27, 2013)
Related proceeding at Colton v. Crossmark, Inc., 2013 U.S. Dist. LEXIS 90331 (E.D. Pa., June 27, 2013)
Related proceeding at Leddy v. CROSSMARK, Inc., 2013 U.S. Dist. LEXIS 90337 (E.D. Pa., June 27, 2013)
Related proceeding at Risley v. CROSSMARK, Inc., 2013 U.S. Dist. LEXIS 90341 (E.D. Pa., June 27, 2013)

**CORE TERMS:** retail, similarly situated, conditional, deposition, supervisor, affirmation, certification, evening, minutes, morning, discovery, spent, class members, class certification, proposed class, compensable, overtime, amend, drive, collective action, certify, notice, teams, time spent, oral argument, unreliable, occurrence, renewed, joined, modest

**COUNSEL:** [*1] For JAMES POSTIGLIONE, LINDA SCHRUEFER, DONNA NIX, PATTI RAWSON, TAMMY TRUEX, BRITTANY DELAVERGNE, ERIC BONAPARTE, JAMES SIMMONDS, SHERRIE WHITE, BRIAN SALTER, DEBBIE STEARNS, CHARLES JAMES, THOMAS HEMMER, JENNIFER HUNT, ELIZABETH ROBINSON, PAMELA HOLBERG, TAMARA MOORE, JERRY SMITH, JOSE AYBER, STEVEN COLTON, AL GALLION, MARIA MATILDE REYES, PATRICIA BETTGER, JEANNE MARIE BRUNOZZI, SUE SPORER, SIOBHAN MORIS, THOMAS GONZALEZ, ANNELISE GUILLEN, LISA GOMLEY, VICKIE MCKENTY, TERESA RISELY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, Plaintiffs: RALPH A. POWELL, LEAD ATTORNEY, POWELL BOZEMAN, YARDLEY, PA; RICHARD P. MYERS, ROBERT E. PAUL, PAUL, REICH & MYERS, P.C., PHILADELPHIA, PA.

For CROSSMARK, INC., Defendant: ALEXANDER KERR, MCCARTER AND ENGLISH, LLP, PHILADELPHIA, PA; JOHN MICHAEL GADDIS, PRO HAC VICE, FISH & RICHARDSON PC, DALLAS, TX; STEPHEN E. FOX, FISH & RICHARDSON LLP, DALLAS, TX.

**JUDGES:** Norma L. Shapiro, J.

**OPINION BY:** Norma L. Shapiro

**OPINION**

**MEMORANDUM**

Plaintiffs allege violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and seek to represent a class of similarly situated individuals pursuant to 29 U.S.C. § 216(b). Before the court are three motions: Plaintiffs' Renewed [*2] Motion for Conditional Certification of Collective Class; Plaintiffs' Motion to Compel Answers to Interrogatories and to Compel Production of Documents; and Plaintiffs' Motion for Leave to Amend their motion for class certification. Because neither the original nor the amended proposed class members are similarly situated to the named plaintiffs, these motions will be denied. Furthermore, all of the named plaintiffs other than Postiglione will be dismissed

from the action as plaintiffs improperly joined under Federal Rule of Civil Procedure 20.

## I. Background

Plaintiffs are current and former employees of defendant Crossmark, Inc. (Crossmark). They include full-time and part-time employees. Defendant Crossmark provides sales, retail merchandising, and inventory management services to retailers and manufacturers of consumer goods. These services are provided by over 12,000 "retail representatives" employed by Crossmark. The retail representatives are divided into different divisions with varying duties, territories, and supervisors. Some teams of retail representatives work only in a particular chain of retail stores but provide inventory and merchandising services for a number of products [*3] within those stores. Other teams work in many different retail stores but provide service only for particular brands of products. Still other teams specialize in labor-intensive reorganizations of shelves and products. Generally, retail representatives travel to different retail store locations to perform their job duties. Retail representatives are paid on an hourly basis and are non-exempt under the FLSA.

Plaintiffs, present and former retail representatives for Crossmark, allege that Defendant violated the FLSA by not paying its employees for overtime. In particular, Plaintiffs allege that they were not paid for three categories of time worked. First, some retail representatives had to perform certain administrative tasks in the morning before beginning their work at the retail locations. These tasks included checking the representative's e-mail and confirming his schedule for the day. Similarly, some retail representatives had to perform administrative tasks in the evenings after completing work at the retail locations. These employees had to enter the data they had collected into Crossmark's computer system and report on the tasks they had performed throughout the day. For each [*4] employee, the time for these administrative tasks in the mornings and evenings varied from a few minutes to a few hours to complete each day, depending on his particular duties. Plaintiffs also allege that some retail representatives had to load promotional materials or merchandise into their cars in the morning and unload those materials in the evenings. Plaintiffs allege that Crossmark employees were not paid for some or all of the time spent working on these administrative tasks in the mornings and evenings. They contend that Crossmark either discouraged or did not allow its employees to record some or all of their administrative time. Crossmark denies this allegation.

Second, retail representatives were not paid for the time they spent driving to their first assignment or home from their last assignment of the day. [1] They were paid for the time spent driving between retail locations. Plaintiffs' position is that the employees' workday begins with the administrative tasks performed at home in the morning and ends with the administrative tasks performed at home in the evening. They argue that all of the employees' driving time throughout the day is compensable. Defendant responds [*5] that the morning and evening drive time is not compensable under the FLSA because the administrative tasks need not be performed at home or immediately before or after the employees complete their assignments at the retail locations.

> 1  Crossmark did pay employees for the time spent driving if these drives were more than forty miles or took more than one hour.

Finally, Plaintiffs allege that at least some retail representatives were not paid for all of the time they spent working at the retail locations. They allege that Crossmark instead paid its employees based on a fixed maximum "budgeted time" or "project time." Crossmark denies this allegation.

Plaintiffs allege that to the extent employees worked more than forty hours a week Crossmark's failure to pay employees for these three categories of time constitutes a violation of the FLSA. Plaintiffs further allege that when these three categories of time are included, even some part-time employees worked more than forty hours a week and are entitled to overtime compensation under the FLSA.

The original complaint in this action listed 31 named plaintiffs. Plaintiffs almost immediately began filing notices that other employees had consented [*6] to join the named plaintiffs in a collective action. On June 3, 2011, this court granted Defendant's motion to dismiss and granted leave for Plaintiffs to file an amended complaint. Plaintiffs' initial motion to certify a class was rendered moot by that order. Plaintiffs took this opportunity to add 21 new named plaintiffs, including the 18 individuals who had filed consents to join the collective action. The amended complaint names 52 plaintiffs. Plaintiffs continued to submit consents to join a collective action.

The court allowed minimal pre-certification discovery, including depositions of ten individuals by defendants. Plaintiffs have filed a renewed motion for conditional certification of a collective class. Plaintiffs ask the court to certify a conditional class of all former and current full-time and part-time employees of Crossmark who have been classified as Retail Representatives or Data Collectors at any time within the previous three years. Plaintiffs ask the court to authorize the sending of notices to all these individuals of their right to opt-in to the class. After lengthy briefing and oral argument on the

motion, Plaintiffs filed a motion for leave to amend their motion [*7] for class certification. Admitting that the members of the originally-proposed class were not similarly situated, Plaintiffs request certification of a narrower class of employees. The amended proposed conditional class would include only those retail representatives employed on a Crossmark Retail Team or a Dedicated Team in only 15 of 41 different departments. There are over 9,000 current employees in those departments working under nearly 300 supervisors. Plaintiffs have also narrowed the proposed conditional class to those persons who were paid to work more than thirty hours a workweek. The amended class would include 31 of the 52 named plaintiffs listed on the current amended complaint. [2]

> 2   The fact that the second proposed class would include only some of the named plaintiffs may create a conflict of interest for Plaintiffs' counsel, who represent all 52 of the named plaintiffs. Because certification is not appropriate for even the smaller amended class, the court need not address this potential conflict.

Just before oral argument on the conditional class certification motion, Plaintiffs filed a motion to compel discovery. The court stayed briefing on that motion pending determination [*8] of the motion for conditional class certification.

## II. Legal Standard

Under the collective action provision of 29 U.S.C. § 216(b) of the FLSA, an employee alleging an FLSA violation can bring a suit on behalf of "himself . . . and other employees similarly situated." The statute provides, however, that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court."

The Court of Appeals for the Third Circuit has recently issued a pair of decisions clarifying the standards to be applied in deciding whether to certify a class under § 216(b). The Court of Appeals has affirmed, but not required, the use of a two-tier analysis. See _Zavala v. Wal Mart Stores Inc._, 691 F.3d 527, 536 (3d Cir. 2012) ("[In _Symczyk_] [w]e implicitly embraced this two-step approach, and we affirm its use here."); _Symczyk v. Genesis HealthCare Corp._, 656 F.3d 189, 192-93 & n.5 (3d Cir. 2011) ("Although this two-step approach is nowhere mandated, it appears to have garnered wide acceptance."). At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally [*9] categorized as similarly situated to the named plaintiff[s]." _Symczyk_, 656 F.3d at 192. This "conditional certifica-

tion" is not really certification of a class under the statute at all. Rather, it is only an exercise of the district court's discretionary power, upheld in _Hoffmann-La Roche Inc. v. Sperling_, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), "to facilitate the sending of notice to potential class members." _Symczyk_, 656 F.3d at 194. Certification at this initial stage "is neither necessary nor sufficient for the existence of a representative action under FLSA." _Id._

The level of proof required at this first stage was long a matter of disagreement among district courts in the Third Circuit. In _Symczyk_, the Court of Appeals clarified the standard and held that the plaintiffs must make a "'modest factual showing' that the proposed recipients of opt-in notices are similarly situated." 656 F.3d at 192-93. The Third Circuit rejected the notion that "substantial allegations" that the class was similarly situated were sufficient for preliminary certification. _Id._ Under the "modest factual showing" standard, the plaintiff must produce some evidence, "beyond pure speculation, of a factual nexus between the manner [*10] in which the employer's alleged policy affected her and the manner in which it affected other employees." _Id._ at 193 (internal quotation omitted). However, the court should not evaluate the merits of the plaintiffs' claims at this point. If the plaintiff meets this burden, the court will "certify" a collective action for the purposes of notice and pretrial discovery.

If a conditional class is certified at the first stage, a court usually engages in the second step of the certification process after discovery has been completed. The defendant will often file a motion to "decertify" the class. The court at this stage makes a conclusive determination that every plaintiff who has opted in to the action is in fact similarly situated to the named plaintiff. _Id._ at 193. If the plaintiff meets his burden here, the case may proceed to trial as a collective action. _Id._ If the court determines that the opt-in plaintiffs are not similarly situated to the named plaintiffs, the opt-in plaintiffs' claims are dismissed without prejudice. See _Myers v. Hertz Corp._, 624 F.3d 537, 555 (2d Cir. 2010). The plaintiff bears a heavier burden of proof at this second stage. At the second stage, the plaintiff [*11] must prove, by a preponderance of the evidence, that the "proposed collective plaintiffs are similarly situated." _Zavala_, 691 F.3d at 536. Courts are to take an ad hoc approach, "consider[ing] all the relevant factors and mak[ing] a factual determination on a case-by-case basis." _Id._ The relevant factors include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." _Id._ at

536-37. Plaintiffs may also be dissimilar if they are subject to individualized defenses. *Id.*

Plaintiffs in this action are now moving for conditional certification at the first stage. In order to prevail at this stage, Plaintiffs must make a "modest factual showing" in which they produce some evidence "of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk,* 656 F.3d at 193. If Plaintiffs were to meet this burden, the court would send notice to potential class members and permit discovery commensurate with the size [*12] and scope of the class certified.

### III. Discussion

As noted above, pending before the court are a motion for conditional class certification and a motion for leave to amend the motion for conditional class certification. After full briefing and oral argument and, according to Plaintiffs, in response to concerns raised by the court at oral argument and documents recently produced by Defendant, Plaintiffs wish to narrow the proposed class. The court begins by determining if even this narrowed class of current and former employees is similarly situated to the named plaintiffs. The discussion below only considers the affidavits and depositions of the named plaintiffs who would be included in the narrowed class.

### A. *Plaintiffs' Evidence is Unreliable*

Although it need not have done so, this court allowed minimal discovery before considering the motion for conditional class certification. Defendant was allowed to send questionnaires to the named plaintiffs and to take a limited number of depositions. Defendant deposed nine of the named plaintiffs and one Crossmark supervisor. Of those nine named plaintiffs, only six would remain in the narrower amended class. Plaintiffs informed the court that [*13] they did not need to conduct any discovery to meet their burden at this stage.

Ultimately, plaintiffs contend that they have established "that Crossmark has an unwritten policy to unlawfully deny wages to Plaintiffs and the proposed class for work they performed on administrative tasks at the beginning and end of each day, and for work they performed at retail locations that exceeded Crossmark's budgeted time limit." Pls.' Reply Supp. Renewed Mot. Cond. Class Cert. 6. They allege a nationwide policy with relation to which the named plaintiffs and the proposed class are similarly situated. Plaintiffs support this allegation with signed affirmations of many of the named plaintiffs and three Crossmark supervisors, charts of unpaid wages and unpaid work hours compiled by Plaintiffs' counsel based on interviews with the named plain-

tiffs, and transcripts of some of the depositions conducted by Defendant.

Plaintiffs' evidence is unreliable. Plaintiffs have produced dozens of affirmations alleging that Defendant failed to pay for compensable overtime. These affirmations seem to be derived from forms and not to have been individually drafted for the employees signing them. Many of the named plaintiffs [*14] and a supervisor contradicted their sworn affirmations in their deposition testimony. Further, Defendant's time sheets contradict both the affirmations and depositions. Some examples will make clear why the court finds Plaintiffs' evidence so unreliable.

Jeanne Brunozzi claimed in her affirmation that she was paid based on "budgeted time" rather than the full amount of time she actually spent at each retail location. Brunozzi Aff. ¶ 8. In her deposition, however, Brunozzi stated that Crossmark paid her for all of the time that she spent in the stores. Brunozzi Dep. 52:15-55:9.

Sherrie White stated that she was paid for a fixed amount of time regardless of how long she spent performing her administrative tasks. In her affirmation, she claimed that she was paid for only 15 minutes per day (75 minutes per week) for performing those tasks. White Aff. ¶ 12. At her deposition, White testified that she was only allowed to record 230 minutes per week for her administrative tasks. White Dep. 119:5-23. In fact, Defendant's payroll records indicate that the amount of administrative time she recorded varied greatly, and that there were some weeks when White recorded and was paid for as much as 16 [*15] hours of administrative time. Def. Opp. to Pls.' Mot. Cond. Cert. Ex. N.

George Gallion claimed in his affirmation that although he spent about 75 minutes per day on administrative tasks, he was only paid for about 30 minutes of that time. Gallion Aff. ¶ 6. In his deposition, Gallion stated that he was told to keep his administrative time to 40 minutes per day, but that in fact he often recorded 60 minutes or more. Gallion Dep. 53:14-54:4. Although Gallion might get a call or e-mail inquiring why he recorded additional administrative time, upon explaining why the tasks took extra time he was never reprimanded and was always paid for overtime entered. *Id.* at 54:9-57:20.

The charts of unpaid wages prepared by Plaintiffs' counsel are similarly unreliable. As stated, Brunozzi acknowledged at her deposition that she was paid for all of the time that she worked at the stores. Brunozzi Dep. 52:15-55:9. According to the chart prepared by counsel, however, there was an average of an hour per day that Brunozzi spent in the stores for which she was not paid.

With only minimal discovery it has become clear that the evidence proffered by Plaintiffs in support of their motions is patently unreliable. [*16] Plaintiffs have failed to make even a modest factual showing; they have not produced any reliable evidence "beyond pure speculation or mere allegations." *Symczyk*, 656 F.3d at 193.

B. *The Proposed Class is Not "Similarly Situated" to the Named Plaintiffs*

Even if Plaintiffs' evidence were reliable, Plaintiffs have not demonstrated a "factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Id.* That is, they have failed to make any showing that the proposed class is "similarly situated" to the named plaintiffs. In fact, the named plaintiffs are not even all similarly situated relative to each other. [3]

> 3    This is even true of the 31 named plaintiffs who would be included in the narrowed class.

With regard to the claims regarding nonpayment for time spent performing administrative work, the affirmations allege different policies. Some plaintiffs claim that they were not compensated by Crossmark for any of their administrative work performed at home. *See, e.g.*, Garcia Aff. ¶ 11; Guillen Aff. ¶ 11. Other plaintiffs allege that they were paid for a fixed 15 minutes regardless of how much time they actually spent [*17] on these tasks. *See, e.g.*, Hise Aff. ¶ 12; Salter Aff. ¶ 12. Still other plaintiffs contend that they were paid a different fixed amount for their administrative work. *See, e.g.*, Postiglione Aff. ¶ 11 (20 minutes per day); Hardin Aff. ¶ 11 (30 minutes per day); Guercio Aff. ¶ 11 (1.5 hours per day). Although Plaintiffs argue that there was a common unwritten policy that applied to the retail representatives, their evidence suggests that there was no common policy at all. The disparity of the claims among the named plaintiffs, the deposition testimony of the employees, and the testimony of the one supervisor deposed make it more likely that any illegal overtime policies were implemented by individual supervisors. The 31 named plaintiffs who would be in the amended class worked under 38 different supervisors in 25 different states. Despite bringing a sampling of named plaintiffs from across the country, Plaintiffs have not demonstrated the existence of a nationwide policy; they have only demonstrated the lack of any such common policy.

Plaintiffs have also failed to demonstrate that the proposed class members are similarly situated with regard to their claims about unpaid time spent loading [*18] and unloading their cars. In Plaintiffs' brief, they allege that all CRT and Dedicated Team members had to load substantial quantities of work materials into their cars in the morning and unload them at night. *See* Pls.' Mot. Leave to Amend 3. At oral argument, however, Plaintiffs' counsel acknowledged that "[b]y and large, the dedicated employees do not have to do that." Oral Arg. Tr. 20, 27, Dec. 20, 2011.

Plaintiffs have not demonstrated that there was any common policy with regard to paying employees for "budgeted" project time as opposed to time actually spent on site. Jeanne Brunozzi testified at her deposition that she was paid for all of the time worked in the stores. Brunozzi Dep. 52:15-55:9. Rhonda McAvinue testified at her deposition that she was never told that she could not exceed the estimated project time; rather, she simply assumed that she could not exceed the amount of budgeted time and so misreported her time worked. McAvinue Dep. 138:14-140:1. Supervisor Deena Schouten, who submitted an affirmation on behalf of Plaintiffs, testified that she always instructed employees to record the full amount of time they worked. Schouten Dep. 186:9-18.

Plaintiffs' evidence may indicate [*19] a company-wide policy to keep costs down by trying to keep employees' time worked at or under forty hours per week. However, Plaintiffs do not identify an illegal company-wide policy to prevent employees from recording overtime hours actually worked or not to pay employees for those hours worked. The disparity in the named plaintiffs' testimony demonstrates that any illegal plans or policies that existed were instituted by individual supervisors.

The proposed class is also not similarly situated with regard to the claim concerning drive time. Plaintiffs claim that their drive time was compensable under the "continuous workday" rule. The application of this rule depends on the nature of the work the retail representatives performed at home and how long that work took. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1059-60 (9th Cir. 2010) (holding that travel time to the job site was not compensable because preliminary activities were either not principal activities or were de minimis). Perhaps even more importantly, the application of the continuous workday doctrine depends on when and where the retail representatives were required to perform their administrative tasks. "Periods during which [*20] an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16(a). If Crossmark's retail representatives were required to return home immediately after their last in-store assignment to complete the administrative tasks, the drive time home may be compensable. However, if they could complete the administrative work at any time in the evening, the employee would likely be considered relieved from duty following that last assignment. *See*

*Rutti*, 596 F.3d at 1060-61 (travel time not compensable because postliminary activities could be performed at any time between 7:00 p.m. and 7:00 a.m.). A similar analysis would apply for the morning drive.

At least some of the plaintiffs testified at their depositions that they had some freedom in deciding when and where to complete their morning and evening administrative tasks. Jeanne Brunozzi testified that she was allowed to perform her evening administrative tasks "any time at night" and that the time when she performed the work varied. Brunozzi Dep. 141:2-18. Some tasks could be performed from a computer anywhere. Brunozzi testified [*21] that she occasionally performed her administrative work from the library, from her husband's workplace, or from a friend's house. *Id.* 105:14-107:19. Debra Stearns testified that she could perform her evening tasks at any time before midnight. Stearns Dep. 89:13-90:23. McAvinue could complete her tasks at any time before 10:00 p.m. McAvinue Dep. 262:13-25. Some plaintiffs testified that during their morning and evening commutes they could stop or make detours for personal errands. *See* McAvinue Dep. 203:23-25; White Dep. 140:5-142:19 (would sometimes drop her children off at school on her way to first assignment). On the other hand, other plaintiffs submitted affirmations stating that they were told to complete their adminsitrative tasks immediately prior to and after completing their other work for the day. *See, e.g.,* Schornack Aff. ¶ 9, 11; Hise Aff. ¶ 9, 11. At oral argument Plaintiffs' counsel acknowledged the differences that existed among the named plaintiffs. "We have some differences of opinion as to the timing of [the administrative tasks], because some employees were told to do this as soon as they got home. Other employees have testified at deposition that they waited an hour [*22] or two to do it." Oral Arg. Tr. 23. These differences are critical to the legal analysis of the drive time claims.

Plaintiffs have not shown that even the narrower proposed class members are similarly situated to the named plaintiffs with regard to any of their claims. The court need not repeat this analysis to conclude that the larger originally-proposed class is not similarly situated to the named plaintiffs.

### C. *Plaintiffs Are Improperly Joined*

For the same reasons that the court finds that the proposed class members are not similarly situated to the named plaintiffs, the evidence makes it clear that no common plan or policy existed even with regard to all the named plaintiffs. This court must therefore determine whether the 52 named plaintiffs are all properly joined parties under Federal Rule of Civil Procedure 20. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Rule 20 provides that multiple plaintiffs may join together in one action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; [*23] and (B) any question of law or fact common to all plaintiffs will arise in the action."

The evidence above demonstrates that the named plaintiffs were not similarly situated with regard to one another. Courts have generally held that § 216(b)'s "similarly situated" requirement is less stringent than the requirement of Rule 20(a) that claims arise out of a common transaction or occurrence. *See O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 584 (6th Cir. 2009); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1095 (11th Cir. 1996). Because plaintiffs have failed to demonstrate that there was a common policy or plan denying overtime compensation required under the FLSA, Plaintiffs have not demonstrated any common transaction or occurrence. *See Boyer v. Johnson Matthey, Inc.,* No. 02-CV-8382, 2004 U.S. Dist. LEXIS 9802, 2004 WL 835082, at *3 (E.D. Pa. April 16, 2004) (where plaintiffs suffered different incidents of discrimination at the hands of different supervisors the joinder requirements could only be met if plaintiffs could establish a common pattern or practice of discrimination). *Compare King v. Pepsi Cola Metro Bottling Co.,* 86 F.R.D. 4 (E.D. Pa. 1979) (upholding joinder where plaintiffs alleging discrimination [*24] all worked in the same plant and were all directly or indirectly under the supervision of the same individual) *with Grayson v. K-Mart Corp.,* 849 F. Supp. 785, 787-89 (N.D. Ga. 1994) (plaintiffs were misjoined because their discrimination claims lacked a common transaction or occurrence under Rule 20 where each employment decision was made by a different manager within the company). Evidence admitted at trial is likely to be highly individualized and focused on the policies and instructions of the named plaintiffs' 38 different supervisors. James Postiglione, the first named plaintiff, worked under the supervision of Brenda Holmes and Paul Walker. Pls.' Mot. Leave to Amend at Ex. 6. None of the other named plaintiffs worked under these supervisors. *Id.* The 52 named plaintiffs are not properly joined and all of them except for the first named plaintiff will be dismissed without prejudice.

### IV. Conclusion

Plaintiffs have failed to make a modest factual showing that the proposed class members are similarly situated to the named plaintiffs. Plaintiffs' evidence lacks credibility. The sheer number of affirmations does little to persuade the court in light of the many material inconsistencies [*25] exposed during the depositions. Even if Plaintiffs' evidence were reliable, it is clear that the proposed class members are not similarly situated. The

named plaintiffs make different claims about how they were to record their administrative and project time, and when they were to perform their administrative tasks. There is no evidence of a nationwide policy or plan. Because even the proposed amended class does not meet the requirement of § 216(b), the larger original class certainly cannot be certified. Plaintiffs' motions to certify a class will be denied.

The evidence demonstrates that the 52 named plaintiffs are not properly joined in a single action. All plaintiffs other than the first named plaintiff will be dismissed without prejudice. The court will also deny without prejudice Plaintiffs' Motion to Compel and give the parties an opportunity to resolve any discovery disputes without court intervention in light of the changed procedural posture of this action. An appropriate order follows.

## ORDER

AND NOW, this 14th day of November, 2012:

1. Upon consideration of Plaintiffs' motion for leave to amend (paper no. 65), motion to certify a conditional class (paper no. 34), and motion [*26] to compel (paper no. 57), and Defendant's responses thereto, it is **ORDERED** that:

a. Plaintiffs' Motion for Leave to Amend Their Renewed Motion for Conditional Class Certification for the Purpose of Narrowing the Class (paper no. 65) is **DENIED.**

b. Plaintiffs' Renewed Motion for Conditional Certification of Collective Class (paper no. 34) is **DENIED.**

c. Plaintiffs' Motion to Compel Answers to Interrogatories and to Compel Production of Documents (paper no. 57) is **DENIED** without prejudice.

2. All of the plaintiffs other than James Postiglione are **DISMISSED** without prejudice.

3. The Clerk of Court shall amend the caption as follows:

/s/ Norma L. Shapiro

J.

**Citation #5**
**2000 U.S. Dist. LEXIS 18434**

LEXSEE



Cited
As of: Jan 15, 2014

**WALLACE BRUNSON, et al., Plaintiffs, -against- THE CITY OF NEW YORK
(DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT), et al.,
Defendants. DEOTHA WOODBURN, et al., Plaintiffs, -against- DEBORAH
WRIGHT, et al., Defendants.**

**94 Civ. 4507 (LAP), 94 Civ. 5632 (LAP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2000 U.S. Dist. LEXIS 18434; 142 Lab. Cas. (CCH) P34,187**

**December 21, 2000, Decided
December 22, 2000, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Class counsel submitted
applications for attorneys' fees following settlement of
class actions seeking to recover minimum wages and
overtime wages allegedly due plaintiffs.

**OVERVIEW:** Plaintiff class members commenced two
separate class actions seeking to recover minimum wages
and overtime wages allegedly due them for their work as
superintendents in buildings owned by defendant city.
The parties to both actions submitted a Stipulation of
Settlement which was approved by the court. Class
counsel submitted applications for attorneys' fees. The
court found counsel did not sustain their burden of
demonstrating the reasonableness of the rates requested
and reduced the rates accordingly. Defendant's objection
to reimbursement for time billed by one attorney prior to
the time of his withdrawal from the case was rejected.
The court reduced the rate charged for legal research
time to a rate more commensurate to the task in each
firm. In light of duplicative activities which would not
have been necessary if fewer counsel had been involved,
the court reduced the time of each firm by 10 percent.
Class counsel were awarded a 50 percent premium based
on the risk of the litigation.

**OUTCOME:** One law firm for plaintiff class was
awarded $ 413,322 in fees and $ 17,693 in expenses; the

other firm for plaintiff class was awarded $ 542,895 in
fees and $ 55,893 in expenses.

**CORE TERMS:** settlement, billed, attorneys' fees, per
hour, hourly rates, time records, common fund, contem-
poraneous, reasonableness, legal research, paralegals,
dollars, billing rates, comparable, lodestar, class actions,
settlement agreement's, time expended, fee-shifting,
awarding, premium, movant, law school, burden of
demonstrating, commensurate, duplication, duplicative,
withdrawal, graduated, preparing

**LexisNexis(R) Headnotes**

*Civil Procedure > Remedies > Costs & Attorney Fees >
Attorney Expenses & Fees > American Rule*
[HN1]In the United States, the general rule is that liti-
gants bear the cost of their litigation, including their own
attorney's fees. But there is a salient exception to this
general rule that applies where an attorney succeeds in
creating a common fund from which members of a class
are compensated for a common injury inflicted on the
class. In that situation, the attorneys whose efforts creat-
ed the fund are entitled to a reasonable fee-set by the
court-to be taken from the fund.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN2]Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN3]In order for a party to recover attorneys' fees, contemporaneous time records must exist that detail the associated work. The records should clearly enumerate the hours, the date and the nature of each attorney's work. Counsel has the burden of keeping and presenting records from which the court can determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested. Counsel seeking fees also has the burden of proving the reasonableness of the requested rates and hours.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN4]In awarding attorneys' fees, the district courts should compare each attorney's billing rates with those of comparable attorneys in similar practices in the same city. Toward that end, the courts recognize that smaller firms may be subject to their own prevailing market rate. In addition, the district court may rely on his or her own knowledge of comparable rates charged by other lawyers in the district.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN5]To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as documented by the attorney's records. Next, the court looks to its own familiarity with the case and its experience generally. Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
[HN6]The risk of the litigation may be considered in awarding attorneys fees.

**COUNSEL:** [*1] For WALLACE BRUNSON, MELVIN CHRISTIAN, GLENN GOLDMAN, CALLIXTUS GUSTAVE, LEON JONES, SAMUEL LUCAS, AMBROSE MITCHELL, ANTHONY TITUS-RICHARDSON, JUAN ORTIZ, plaintiffs (94-CV-4507): Alan M. Pollack, Pollack & Greene, New York, NY.

For WALLACE BRUNSON, MELVIN CHRISTIAN, GLENN GOLDMAN, CALLIXTUS GUSTAVE, LEON JONES, SAMUEL LUCAS, AMBROSE MITCHELL, ANTHONY TITUS-RICHARDSON, JUAN ORTIZ, plaintiffs (94-CV-4507): Charles R. Virginia, Virginia & Ambinder, P.C., New York, NY.

For WALLACE BRUNSON, MELVIN CHRISTIAN, GLENN GOLDMAN, CALLIXTUS GUSTAVE, LEON JONES, SAMUEL LUCAS, AMBROSE MITCHELL, ANTHONY TITUS-RICHARDSON, JUAN ORTIZ, plaintiffs (94-CV-4507): Paul Wooten, Paul Wooten & Associates, Brooklyn, NY.

For GOTHAM BUILDING MAINTENANCE CORP., defendant (94-CV-4507): Solomon H. Friend, Friend, Marks & Schlussel, Great Neck, NY.

For DEOTHA WOODBURN, SOLAIRE MERILIEN, FRED JONES, GLADIS GRIFFIN, LUIS RODRIGUEZ, plaintiffs (94-CV-5632): Earl A. Rawlins, New York, NY.

For DEOTHA WOODBURN, plaintiff (94-CV-5632): Kristian Earl Lynch, Kristian Earl Lynch, Esq., New York, NY.

For DEBORAH WRIGHT, FELICE MICHETTI, HPD, DIGITAL SOLUTIONS, INC., SECURITY AND BONDED MAINTENANCE [*2] CORP., LOCAL 32B-J OF THE SERVICE EMPLOYEES INTERNATIONAL UNION OF THE AFL-CIO, defendants (94-CV-5632): Blanche Jayne Greenfield, Paul A. Crotty, Corp. Counsel of the City of New York, New York, NY.

**JUDGES:** LORETTA A. PRESKA, United States District Judge.

**OPINION BY:** LORETTA A. PRESKA

**OPINION**

*MEMORANDUM AND ORDER*

**LORETTA A. PRESKA, United States District Judge:**

Case 3:12-cv-00831-JCH   Document 111-1   Filed 01/15/14   Page 50 of 54

2000 U.S. Dist. LEXIS 18434, *; 142 Lab. Cas. (CCH) P34,187

Plaintiffs commenced these class actions six years ago seeking to recover minimum wages and overtime wages allegedly due them for their work as superintendents in buildings owned by the City of New York. Although these actions were never formally consolidated, they have been handled as such by counsel and the Court. On February 16, 2000, the parties to both actions submitted a Stipulation of Settlement which was entered as an Order of the Court, and, on April 28, 2000, a fairness hearing was held at which time the settlement was found to be fair, reasonable and adequate. In connection with the settlement, class counsel submitted applications for attorneys' fees which are now ripe for decision.

[HN1]It is the rule in this country that litigants bear the cost of their litigation, including their own attorney's fees. See _Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)_. [*3]  But,

> there is a salient exception to this general rule that applies where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class. In that situation, the attorneys whose efforts created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund.

_Id._ (citations omitted). [1]

> 1   Defendants argue that "the common fund basis for awarding attorneys' fees is inapplicable where a fee is available under statute" citing 10 James Wm. Moore et al., _Moore's Federal Practice_ § 54.171[2][a](3rd ed. 1997). Letter from Jane Tobey Momo to Judge Preska 3 (Aug. 11, 2000). What defendants overlooked, however, is that _Moore's_ states that "if a class action is brought under a federal statute that expressly authorizes fee-shifting _and the case is litigated to judgment_, the plaintiff class can recover fees from the litigation opponent directly under the statute." 10 James Wm. Moore et al., _Moore's Federal Practice_ § 54.171[2][a] (3rd ed. 1997) (emphasis added). When a case is brought under a statute pursuant to which an attorney may receive fees pursuant to a fee-shifting statute and the case is resolved by a settlement, the equitable fund doctrine is still applicable. See _Florin v. Nationsbank of Ga., 34 F.3d 560, 563-64 (2d Cir. 1994)_; _County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1327-28 (2d Cir. 1990)_.

[*4]  Here, the parties have entered into a Stipulation of Settlement which provides that:

> pursuant to applicable law, Class Counsel will make an application to the District Court for approval of an award of attorney[s'] fees and costs based upon the legal standards applicable to such awards. The City of New York will pay any amounts awarded by the Court based upon contemporaneous time records up to one million dollars. Said payment shall be from funds that are not part of the Settlement Fund of thirteen million dollars. In the event that the Court awards attorneys' fees and costs in excess of one million dollars, the amount in excess of one million dollars will be payable from and reduce the funds allocated for the class in Part III (General) of the Settlement Fund.

(Settlement Agreement, Article XI.)

Although the _Goldberger_ court made clear that [HN2]"both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases," 209 F.3d at 50, I exercise my discretion to employ the lodestar method in this action. Given the large size of the common fund and the settlement agreement's specific [*5]  reliance on contemporaneous time records, that method is most reasonable here. [2]

> 2   I note in passing that utilization of the percentage method as requested by class counsel would result in a windfall to those lawyers. For example, P&G seeks a total of $ 2,925,000 on behalf of all counsel. The total of 3,564.22 hours claimed (1398.15 for P&G, 1915.4 for V&A, and 250.67 for Mr. Wooten) would yield a recovery of approximately $ 820 per hour. Similarly, V&A requests $ 1.3 million for itself. Based on the total hours billed by the firm of 1915.4, the percentage recovery requested would yield some $ 678 per hour. Neither these numbers nor anything close to them represents "reasonable" compensation for this action.

Wholly apart from the requirements of the Stipulation of Settlement, [HN3]in order for a party to recover attorneys' fees, contemporaneous time records must exist that detail the associated work. See _Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986)_; _Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 28 (E.D.N.Y. 1997)_. [*6]  The records should clearly enumerate the hours,

Case 3:12-cv-00831-JCH   Document 111-1   Filed 01/15/14   Page 51 of 54

2000 U.S. Dist. LEXIS 18434, *; 142 Lab. Cas. (CCH) P34,187

the date and the nature of each attorney's work. *See New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Counsel has the burden of "'keeping and presenting records from which the court [can] determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested.'" *Foster*, 174 F.R.D. at 28 (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987)). Counsel seeking fees also has the burden of proving the reasonableness of the requested rates and hours. *Savoie v. Merchants Bank*, 166 F.3d 456, 463 (2d Cir. 1999); *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d Cir. 1994).

[HN4]The Court of Appeals has instructed district courts to compare each attorney's billing rates with those of comparable attorneys in similar practices in the same city. *See Carey*, 711 F.2d at 1151. Toward that end, I recognize that "smaller firms may be subject to [*7] their own prevailing market rate." *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989). *See also Algie v. RCA Global Communication, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995) ("If the movant is represented by a small or medium-sized firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover other overhead."). I also note that the Court of Appeals has sanctioned an approach that allows the district court judge to rely, in addition, on his or her own knowledge of comparable rates charged by other lawyers in the district. *See Ramirez v. New York City Off-Track Betting Corp.*, 1997 U.S. Dist. LEXIS 4185, No. 93 Civ. 0682 (LAP), 1997 WL 169369, at *2 (S.D.N.Y. April 3, 1997) (citing *Miele v. New York State Teamsters Conference Pension and Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).

*V&A Attorney Rate*

V&A has sought a rate of $ 275 per hour for Messrs. Virginia and Ambinder, both of whom graduated [*8] from law school in 1989. In support of its application for that rate, V&A has submitted the affidavits of three other attorneys, none of whom is a practitioner in a relevant area of the law and one of whom graduated from law school several years prior to Messrs. Virginia and Ambinder. I find that V&A has not sustained its burden of demonstrating the reasonableness of the rate requested.

Defendants have presented the affidavit of Suzanne M. Halbardier (Ex. D to Momo Aff.) and a survey of cases, mostly civil rights cases, noting rates found applicable to attorneys of varying levels of seniority. (Ex. E to Momo Aff.) Based on all of the materials in the record on this case as well as my knowledge of hourly rates from other cases and my own experience, I find the hourly rate of $ 225 to be appropriate for Messrs. Virginia and Ambinder. I find the hourly rate of $ 100 requested for Ms. Arrospide, a law clerk, to be reasonable.

*P&G Attorney Rate*

P&G has sought hourly rates ranging from $ 300 per hour down to $ 150 per hour for lawyers and $ 50 for paralegals. Other than general statements to the effect that its "senior partners" have "over 20 years experience in the practice of [*9] law" and that its range of rates is "equal to or below that of most firms with comparable legal experience" (Pollack & Greene Petition at P 15), P&G failed to provide any information in support of the rates sought, including information as to the various attorneys' qualifications or why the rates sought might or might not be reasonable. Thus, P&G has also failed to sustain its burden of demonstrating the reasonableness of the rates requested.

Again, relying on the materials in the record here, other fee applications and my general knowledge of billing rates, I find the following rates applicable to the lawyers indicated:

| Attorney | Rate |
| --- | --- |
| A. Davidovits, Esq. | 150 |
| M. Goldberger, Esq. | 125 |
| M. Greene, Esq. | 275 |
| L. Kohl, Paralegal | 50 |
| A. Koplitz, Esq. | 150 |
| B. Larsen, Esq. | 150 |
| A. Pollack, Esq. | 275 |
| R. Schimkat, Esq. | 125 |
| Y. Shtindler, Paralegal | 50 |

Case 3:12-cv-00831-JCH   Document 111-1   Filed 01/15/14   Page 52 of 54

2000 U.S. Dist. LEXIS 18434, *; 142 Lab. Cas. (CCH) P34,187

| Attorney | Rate |
|---|---|
| C. Sigmond, Esq. | 150 |
| K. Wade, Paralegal | 50 |

*Number of Hours*

[HN5]To assess the reasonableness of the time expended by an attorney the court must look first to the time and work as documented by the attorney's records. *See Forschner Group, Inc. v. Arrow Trading Co., Inc., 1998 U.S. Dist. LEXIS 19557,* No. 92 Civ. 6953 (LAP), 1998 WL 879710, [*10] at *2 (S.D.N.Y. Dec. 15, 1998). Next the court looks to "its own familiarity with the case and its experience generally. . . . Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court." *AFP Imaging Corp. v. Philips Medizin Sys., 1994 U.S. Dist. LEXIS 17764,* *4, No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994) (quoting *Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)* (quoting *Di Filippo v. Morizio, 759 F.2d 231, 236 (2d cir. 1985)).

*Alan Pollack*

The City objects to reimbursement for time billed by Alan M. Pollack prior to the time of his withdrawal from the case. (Momo Decl. at PP 48-51). Pursuant to the stipulation by which Mr. Pollack withdrew as counsel, the parties agreed that "Alan M. Pollack shall not derive any remuneration, be it draw, salary or bonus compensation, from the attorneys' fees awarded, if any, in connection with this case." (Momo Decl., Ex. J, P 3[R]). Nothing in that stipulation requires Mr. Pollack's time expended prior to his withdrawal to be rendered on a pro bono basis. Indeed, those hours benefitted the class in [*11] the same manner as if the services reflected therein were performed by some other attorney. Accordingly, the City's objection to these hours is rejected.

*Legal Research*

With respect to P&G's hours, I note that close to 90% of the hours billed by P&G were billed at the two

highest hourly rates and that 64% of the hours were billed at the very highest billing rate. Those high rates were billed for some 162 hours of legal research. (Momo Aff., P 22.) One hundred hours of the legal research time shall be charged at a $ 150, a rate more commensurate to the task in that firm. Similarly, some 82% of V&A's hours were billed at the highest rates. For the same reason, 150 hours of that firm's legal research will be reduced from the highest billed rate to $ 100, a rate more commensurate to the task in that firm.

*Duplication of Effort*

In considering the other attorneys' hours in general, [3] I note the large number of class counsel on the case. Although, to some extent, the work was divided up among the various attorneys, the great number of attorneys did result in duplicative work. I note numerous instances of telephone calls and conferences between and among the various attorneys [*12] discussing an issue or preparing for a court appearance. Some 1,700 hours were expended by class counsel in conferring with each other. (Momo Decl. P 44.) I also recall that numerous class counsel appeared for each court conference. Similar duplication is exhibited in one lawyer's preparing for and attending a deposition being conducted by another lawyer from another firm. (*See* Ex. K to Momo Aff., lines 60, 66-69.) In light of these types of duplicative activities which would not have been necessary if fewer counsel had been involved, reductions of 10% in the time of P&G and V&A is appropriate.

> 3   Although Mr. Wooten filed a fee application, it was later withdrawn. Also, Mr. Rawlins has submitted no time records and, accordingly, may not receive compensation.

In light of the above, the lodestar amounts for the two firms are as follows:

*Pollack & Greene*

| hours at $ 275: | | | | |
|---|---|---|---|---|
| | | | | |
| Greene | | 577.60 | | |
| Pollack | | 323.45 | | |
| | | 901.45 | | |
| (to be billed at $ 150) | | - 100.00 | | |
| | | 801.45  x 275 | = | $ 220,288.75 |

2000 U.S. Dist. LEXIS 18434, *; 142 Lab. Cas. (CCH) P34,187

| hours at $ 150: | | | | |
|---|---|---|---|---|
| | | | | |
| Davidovits | 100.50 | | | |
| Koplitz | 10.90 | | | |
| Larsen | 2.30 | | | |
| Sigmond | 250.75 | | | |
| | 364.45 | | | |
| (from $ 250/hr) | + 100.00 | | | |
| | 464.45 | x 150 | = | 69,667.50 |
| | | | | |
| hours at $ 125 | | | | |
| | | | | |
| Goldberger | 55.05 | | | |
| Schimkat | 43.00 | | | |
| | 98.05 | x 125 | = | 12,256.25 |
| | | | | |
| hours at $ 50 | | | | |
| | | | | |
| Kohl | 10.00 | | | |
| Shtindler | 16.60 | | | |
| Wade | 8.00 | | | |
| | 34.60 | x 50 | = | 1,730.00 |
| | | | | $ 303,942.50 |
| | | | | |
| | reduced by 10% | | = | $ 273,548.25 |

[*13]   *Virginia & Ambinder*

| hours at $ 250: | | | | |
|---|---|---|---|---|
| | | | | |
| Virginia | 1,389.85 | | | |
| Ambinder | 207.95 | | | |
| | 1,597.80 | | | |
| (to be billed at $ 100) | - 150.00 | | | |
| | 1,447.80 | x 225 | = | $ 325,755.00 |
| | | | | |
| hours at $ 100: | | | | |
| | | | | |
| Arrospide | 317.60 | | | |
| (from $ 225/hr.) | + 150.00 | | | |
| Larsen | 467.60 | x 100 | = | 46,760.00 |
| | | | | 372,515.00 |
| | reduced by 10% | | = | $ 335,263.50 |

In addition, V&A is awarded $ 40,000 in fees for future work in connection with the settlement.

*Degree of Difficulty*

[HN6]Finally, the Court of Appeals has permitted the risk of the litigation to be considered in awarding attorneys fees. *Goldberger, supra*, 209 F.3d at 43. Here, class counsel faced significant obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs. Through diligence in documentary discovery and in the mediation process, class counsel was able to present a sufficiently strong case to effect the settlement that was approved. Accordingly, class counsel is awarded a 50% premium resulting in an award for past services to P&G of $ 413,322.37 and to V&A of $ 502,895.25. I do not apply the premium to V&A's future services.

[*14] *Expenses*

I have reviewed the expenses reflected in counsel's billing records and find them to be reasonable and appropriate. Accordingly, P&G is awarded $ 17,692.70 in expenses, and V&A is awarded $ 38,857.93 in past expenses and $ 17,035.10 in future expenses.

*CONCLUSION*

The firm of Pollack & Greene is awarded $ 413,322.37 in fees and $ 17,692.70 in expenses; the firm of Virginia & Ambinder is awarded $ 542,895.25 in fees and $ 55,893.03 in expenses.

SO ORDERED:

December 21, 2000

LORETTA A. PRESKA, U.S.D.J.